*854 OPINION OF THE COURT
James H. Shaw, Jr., J.
The defendants in this shareholder’s derivative suit move for summary judgment dismissing the complaint based upon the recommendation of the Intelogic Trace, Inc. special litigation committee that the litigation not be pursued. The plaintiff opposes the motion on the grounds that the committee was not composed of independent, impartial board members and that it failed to conduct a careful, good-faith investigation before recommending discontinuance.
The plaintiff shareholder, Edith Davidowitz, has brought this derivative suit for the benefit of nominal defendant Intelogic Trace, Inc. (Intelogic) against the members of Intelogic’s board of directors, all of whom are named as defendants. The board members are Asher B. Edelman, chairman of the board; Leon Botstein, chairman of the special litigation committee (committee); Daniel R. Kail, member of the committee; Michael E. Schultz, member of the committee, and Dwight D. Sutherland, also a committee member. Clark Mandigo, Henry G. Cisneros, and Burton Lehman are also named as defendants, but are not committee members.
Asher Edelman gained control of Datapoint Corp. in 1985, after a proxy contest. Later that year, the newly elected Edelman board spun off a profitable subsidiary, Intelogic, which then issued a high-yield debt offering of $100 million in debentures; a portion of these proceeds were invested by Arbitrage Securities, an Edelman-controlled corporation. Edelman controls both Intelogic and Datapoint, its former parent, sitting as chairman of the board of both corporations. Through stock ownership, status as a senior officer or as a general partner, Edelman is also affiliated with A. B. Edelman Management Co. Inc., Canal Capital Corp., Plaza Securities Co., Conram Corp. and Canal-Randolph, L.P. In Intelogic’s SEC filings, Edelman is listed as the beneficial owner of shares held by Plaza Securities, Canal Capital, Datapoint, and Arbitrage Securities because of his control over their investments. The SEC findings also note that Intelogic participates in investment groups consisting primarily of parties affiliated with Edelman.
The plaintiff shareholder alleges that the board permitted Edelman to use Intelogic’s funds to purchase Datapoint stock and thereby defeat a proxy fight for control of Datapoint instituted by Martin Ackerman, a rival investor who sought to *855 unseat Edelman. Edelman, who had been designated Intelogic’s investment advisor, purchased 3,000,000 shares of Data-point for Intelogic’s arbitrage fund over the course of two days, driving the price of Datapoint to $6 per share. The complaint alleges that Datapoint now trades in the $3-$4 per share range, for a loss on the $15 million investment of three quarters of a million to six and a quarter million dollars. The plaintiff alleges that, in view of the fact that Intelogic’s profits had dropped sharply in the years since the Edelman takeover and the corporation had accrued substantial long-term debt over the same time period, the purchase constitutes a waste of corporate assets and a breach of fiduciary duty.
The complaint further alleges that, in addition to draining Intelogic’s working capital to fund Edelman’s stock speculation, Edelman channeled nearly half of the proceeds of the debenture offering into the firm’s arbitrage fund. The Data-point purchase and the similar but unsuccessful attempted purchase of Storehouse, PLC, a British company, are alleged to have caused heavy losses to Intelogic in order to benefit Edelman and his group in their stock speculation activities, constituting a waste of corporate assets and a breach of fiduciary duty.
In a letter to the board, another shareholder had demanded that the corporation sue the board and Edelman upon these transactions; the board assigned both actions to a special litigation committee for review and determination of whether to continue the litigation. Botstein was named chair, and Kail, Schultz and Sutherland were named members. At the recommendation of Lehman, a board member and counsel to Data-point and Intelogic, the committee retained the firm of Shereff, Friedman, Hoffman & Goodman as counsel.
Shereff, Friedman conducted an investigation and prepared a memorandum to the special committee, dated June 4, 1990, recommending that the derivative litigation not be pursued. The committee adopted the report and the defendant board members now offer it as the foundation of their motion for summary judgment.
The seminal case of Auerbach v Bennett (47 NY2d 619) sets forth the scope of court inquiry into corporate decision making by a special litigation committee. When a corporation receives a demand by a shareholder to institute or to continue derivative litigation against its board, that board may appoint an independent litigation committee of directors who were not *856 implicated in the wrongful conduct and who are not officers or employees of the corporation (Auerbach v Bennett, supra, at 629-630). This committee may be empowered to investigate and report back to the full board or may, as here, be granted the full authority to investigate the challenged actions and determine the corporation’s course of action; the committee may also retain independent counsel, as was done in this instance (Hasan v Clevetrust Realty Investors, 729 F2d 372, 375; Auerbach v Bennett, supra, at 635).
The court may not inquire into the merits of the special committee’s final determination, as the "courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments” (Auerbach v Bennett, supra, 47 NY2d, at 630). Because derivative claims belong to the corporation, judgments as to which claims to pursue belong specifically to the company’s board (supra, at 631). However, the courts are not foreclosed from inquiry into the "disinterested independence of those members of the board chosen by it to make the corporate decision on its behalf— here the members of the special litigation committee. Indeed the rule shields the deliberations and conclusions of the chosen representatives of the board only if they possess a disinterested independence and do not stand in a dual relation which prevents an unprejudicial exercise of judgment” (Auerbach v Bennett, supra, at 631; see also, Parkoff v General Tel. & Elecs. Corp., 53 NY2d 412, 417).
The court therefore turns to an assessment of the independence of the members of the special litigation committee. The committee chair, Botstein, is the president of Bard College. He testified that he participated in Edelman’s investment group in the takeover of Canal Randolph in 1983 or 1984, as well as in other investment groups. Edelman contributed $1.5 million to Bard in the years 1986 through 1989. Botstein denies that this donation influenced his judgment.
Kail, another committee member, participated in various Edelstein takeover groups; he is also a director of both Intelogic and Datapoint, and is executive vice-president of Canal Capital Corporation. Schultz, also a director of Canal Capital, stated during his deposition that he is Edelman’s tax attorney as well as a personal friend. Dwight D. Sutherland is a director of Datapoint and Canal Capital, as well as a participant in Edelman’s takeover groups. He stated at his deposition that he had made $6 million on the "Payless” deal engineered by Edelman.
*857 The close business and personal relations demonstrated among the committee members, the board and Edelman preclude this court from finding that the committee possessed the required disinterested independence (Hasan v Clevetrust Realty Investors, 729 F2d 372, 379, supra; Auerbach v Bennett, supra, at 632). Unlike the committee in Auerbach (supra), the Intelogic committee members shared business and personal ties with Edelman and the other board members which preclude a finding of genuine independence. Even the counsel retained by the committee was chosen by Lehman, counsel to Datapoint and to Edelman as well as Intelogic.
Further, three of the members of the committee are members of the board of Canal Capital, an Edelman-controlled corporation, while Kail and Sutherland are members of the board of Datapoint, as well.
The common directorships and cross-relations create an inherent conflict of interest (Alpert v Williams St. Corp., 63 NY2d 557, 570). Directors have fiduciary duties of care and due diligence which require them to do more "than passively rubber-stamp the decisions of the active managers” (Barr v Wackman, 36 NY2d 371, 381; Schmidt v Magnetic Head Corp., 101 AD2d 268, 281). A. court may scrutinize a derivative plaintiffs allegations where the directors stand in a dual relation which prevents their exercise of disinterested judgment (Schmidt v Magnetic Head Corp., supra, at 282, citing United Copper Sec. Co. v Amalgamated Copper Co., 244 US 261, 263). The members of the Intelogic special litigation committee stand in the prohibited dual relations to Datapoint and Edelman and are not the independent, disinterested body required by law (Auerbach v Bennett, supra, at 632; Parkoff v General Tel. & Elecs. Corp., supra, at 417; Hasan v Clevetrust Realty Investors, supra, at 375). The court also notes that the committee members are themselves alleged to have breached their fiduciary duties of care and diligence.
The investigation mounted by the committee did not fulfill the requirements of a thorough and reasonable inquiry. While the committee members are entitled to rely upon the advice of counsel, only one member of the Intelogic committee attended one interview. The committee did not join in their counsel’s investigation or review, save in the most perfunctory manner (see, Rosengarten v International Tel. & Tel. Corp., 466 F Supp 817, 824-825).
Counsel also approached the investigation having deter *858 mined that the actions of the board were shielded by the business judgment doctrine and their inquiry consequently was limited. The erroneous use by the committee of a court’s limited standard of review rather than the careful, diligent and meticulous standard required of a committee scrutinizing a possible breach of fiduciary duty vitiates the usefulness of the committee’s findings as a defense to this action (see, Auerbach v Bennett, supra, at 632; Hasan v Clevetrust Realty Investors, supra, at 379).
The report of the special litigation committee is not entitled to this court’s deference as a genuine business judgment, and therefore may not form the basis of a summary judgment dismissal (Auerbach v Bennett, supra, at 636). Since questions of law and fact exist, inter alla, concerning the defendants’ alleged breach of their fiduciary duties in designating Edelman as Intelogic’s investment advisor and retaining him in that position under the circumstances alleged, summary judgment must be denied (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067).
Accordingly, the defendants’ motion for summary judgment is denied.