Stephen EINHORN, Plaintiff-Appellant-Petitioner,

v.

James D. CULEA, Northern Labs, Inc. and Northern
Labs Manufacturing, Inc., Defendants-Respondents.

Supreme Court

*No. 97–3592. Oral argument January 5, 2000.—Decided June
22, 2000.*

2000 WI 65

(Also reported in 612 N.W.2d 78.)

For the plaintiff-appellant-petitioner, there were briefs by *Robert H. Friebert, Matthew W. O'Neill* and *Friebert, Finerty & St. John, S.C.*, Milwaukee, and oral argument by *Matthew W. O'Neill.*

For the defendants-respondents, there was a brief by *Dean P. Laing* and *O'Neil, Cannon & Hollman, S.C.*, Milwaukee, and oral argument by *Dean P. Laing.*

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals[1] affirming a judgment and order of the circuit court for Ozaukee County, Joseph D. McCormack, Circuit Judge. The circuit court dismissed the derivative shareholder action of Stephen Einhorn, a minority shareholder and member of the board of directors of Northern Labs.[2] The circuit court concluded that the threshold for determining whether a member of the special litigation committee is independent within the meaning of Wis. Stat. § 180.0744 (1997–98) is "extremely low" and found that the special litigation committee was independent. Accordingly, the circuit court dismissed Einhorn's derivative action pursuant to § 180.0744(1).[3]

---

[1] *Einhorn v. Culea*, 224 Wis. 2d 856, 591 N.W.2d 908 (Ct. App. 1999).

[2] For purposes of this opinion, Northern Labs, Inc., and Northern Labs Manufacturing, Inc., are treated as the same corporate entity, and will be referred to collectively as "Northern Labs."

[3] Unless otherwise noted, all references to the Wisconsin Statutes are to the 1997–98 volumes. Wisconsin Stat. § 180.0744, the sole statute in question in this appeal, was adopted and amended in 1991. It has not been amended thereafter.

Wisconsin Stat. § 180.0744(1) reads as follows:

¶ 2. The court of appeals affirmed the judgment of the circuit court, concluding that the circuit court's assessment of whether each member of the special litigation committee was independent was based on facts supported by the record and was not clearly erroneous.

¶ 3. The issue raised in the present case is the proper interpretation and application of the standard set forth in Wis. Stat. § 180.0744 of whether a member of a special litigation committee is independent. The issue is not whether the derivative action will succeed, but whether the derivative action should be dismissed on the basis of the decision of the special litigation committee.[4] For the reasons set forth, we conclude that the circuit court and the court of appeals erred in declaring that the threshold established by the legislature in § 180.0744 in determining whether a member of a special litigation committee is independent is "extremely low." We further conclude that in deciding whether members of the special litigation committee are independent, the circuit court should determine whether, considering the totality of the circumstances, a reasonable person in the position of the member of the special litigation committee can base his or her decision on the merits of the issue rather than on extraneous considerations or influences. In other words, the

---

180.0744. Dismissal

(1) The court shall dismiss a derivative proceeding on motion by the corporation if the court finds that [a special litigation committee]. . .has determined, acting in good faith after conducting a reasonable inquiry upon which its conclusions are based, that maintenance of the derivative proceeding is not in the best interests of the corporation. . . .

[4] Culea's motion to strike Einhorn's brief because it purportedly exceeds the 11,000-word limit by 234 words, Wis. Stat. § (Rule) 809.19(8)(c), is denied. No costs are awarded.

test is whether a member of the committee has a relationship with an individual defendant or the corporation that would reasonably be expected to affect the member's judgment with respect to the litigation at issue. Because the circuit court did not make sufficient findings of fact and did not apply the correct legal standard to determine whether the members of the special litigation committee were independent, we reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings not inconsistent with this decision.

I

¶ 4. We set forth the background of the dispute here. Additional facts relevant to the issue of whether the members of the special litigation committee were independent are set forth later in the opinion.

¶ 5. In December 1985, James D. Culea (the defendant), Stephen Einhorn (the plaintiff), and Einhorn's business partner, Orville Mertz, acquired Northern Labs. The Northern Labs stock was distributed as follows: Culea 56.09%, Einhorn 20.60% and Mertz 20.06%.[5] The remaining stock was owned by other managers and directors. Culea has served as president, manager, director and majority shareholder of Northern Labs since 1986. Einhorn has been a director and minority shareholder.

¶ 6. At the time of its acquisition in 1985, Northern Labs had annual sales of $16 million and generated little profit. During the period between 1986 and 1992, Northern Labs' sales and profits increased. In the 1993

---

[5] Any disagreements among the parties about the exact percentages of ownership are not material to our discussion or holding.

fiscal year, Northern Labs generated $33 million in sales and $1.9 million in profits.

¶ 7. In 1992, Culea sought a retroactive performance bonus, asserting that he had been undercompensated in the years following the acquisition. In May 1992, he sent a notice to the directors scheduling a compensation committee meeting and a board of directors meeting for July 29, 1992. At that time the board of directors consisted of Culea, his wife Shelly Culea, Einhorn, Mertz, and the company's vice president of finance, Robert Bonk. Culea, Mertz and Bonk comprised the compensation committee.

¶ 8. On July 29, 1992, the compensation committee unanimously approved a retroactive bonus to Culea of approximately $300,000, a portion of which was to be paid with Northern Labs stock. A board of directors meeting was held immediately after the compensation committee meeting. The four directors in attendance—Culea, Mertz, Bonk and Shelly Culea—voted unanimously to ratify the compensation committee's decisions. Einhorn did not attend the July 29, 1992, board of directors meeting. Following Culea's stock compensation, the stock was allocated as follows: Culea 76%, Einhorn 22%, and Bonk 2%.[6]

¶ 9. On December 9, 1993, Einhorn filed a direct action against Culea, alleging that Culea had willfully breached his fiduciary duty to Einhorn by participating in and causing the corporation to award a self-dealing retroactive bonus to Culea of $300,000 and to issue stock for no consideration or at a grossly inadequate price. Einhorn alleged that he had been "damaged by the dilution of his percentage of ownership in the companies and by a reduction in the value of his interest in

---

[6] Prior to the board meeting, Mertz and two other stockholders had sold their holdings.

░░░░░░░░░░░░░░░░░░░░

░░░░░░░░░░░░░░░░░

the companies. . . ." Einhorn sought a judgment ordering Culea to surrender stock to Northern Labs and to reimburse Northern Labs for all cash payments received by him for the retroactive bonus.

¶ 10. On May 3, 1994, Culea filed a motion for summary judgment arguing, among other things, that Einhorn improperly filed his suit as a direct action instead of a derivative action. The circuit court agreed with Culea and gave Einhorn 30 days to amend his complaint.

¶ 11. Einhorn amended his complaint in November 1994 to state a derivative action with allegations similar to those in his original complaint. The members of the board of directors in November 1994 were, pursuant to a stock agreement, appointees of Culea and Einhorn. In addition to himself and his wife, Culea appointed his neighbor Dwight Chewning, Northern Labs CFO Robert Bonk, and Lolita Chua, a friend of Shelly Culea. Einhorn appointed himself and his business partner, John Beagle.

¶ 12. Following Einhorn's amended complaint, on December 9, 1994, Culea issued a notice of a special meeting of the board of directors for December 16, 1994. Culea's notice indicated that Chewning and Chua were new members of the board and that the board would be voting on whether the maintenance of Einhorn's derivative action was in the best interests of the corporation. Einhorn requested to bring an attorney to the meeting but his request was denied by the corporate counsel for Northern Labs. Corporate counsel's firm represented Culea in the action filed by Einhorn.

¶ 13. The board of directors met as scheduled on December 16, 1994. Northern Labs' corporate counsel advised that because Einhorn, Culea and Shelly Culea

had an interest in the dispute, they should not partici-
pate in any vote, whether as directors or as potential
members of any special litigation committee. The board
then created a special litigation committee composed of
Chewning, Bonk, Chua and Beagle.[7]

¶ 14. After five months of meetings and approxi-
mately 500 hours of inquiry, the special litigation
committee voted three to one that continuation of Ein-
horn's derivative action was not in the best interests of
the corporation.[8] Based on this vote and pursuant to
Wis. Stat. § 180.0744(1), Culea moved the circuit court
to dismiss Einhorn's derivative action.

¶ 15. In a decision and order dated October 30,
1995, the circuit court denied Culea's motion to dismiss
the action, stating that it was not prepared to find that
the special litigation committee met the criteria of
being independent set forth in Wis. Stat. § 180.0744.
After a seven-day trial to the circuit court on the issue
of whether the members of the special litigation com-
mittee were independent under § 180.0744, the circuit
court concluded that the threshold established by the

---

[7] In addition to asserting that the four directors who
became members of the special litigation committee were not
independent, Einhorn also asserts that no vote was taken to
appoint the special litigation committee, as required by Wis.
Stat. § 180.0744(2)(b). While the court of appeals recognized
that "the creation of the SLC [special litigation committee]
could have been better documented," the court of appeals
rejected this argument. *Einhorn v. Culea*, 224 Wis. 2d 856,
869–70, 591 N.W.2d 908 (Ct. App. 1999). While the record does
not reflect that a formal vote was taken to create the special
litigation committee, it suggests that the formation of the com-
mittee was done by consensus of the four directors who
ultimately served on the special litigation committee.

[8] The lone dissenting vote was John Beagle, Einhorn's busi-
ness partner.

legislature in determining whether members of the special litigation committee were independent is "extremely low." The circuit court found that the members of the committee were independent within the meaning of § 180.0744, that they acted in good faith and that they made their determination from conclusions based upon a reasonable inquiry.[9] The circuit court dismissed the derivative action. The court of appeals affirmed the judgment of the circuit court.

## II

¶ 16. The present case is a derivative action. A derivative action differs from ordinary commercial litigation and from a representative action such as a class action. In a derivative action, the claims belong to the corporation, not to the complaining shareholder. The complaining shareholder is challenging, on behalf of the corporation that has been unwilling to bring the suit, specific corporate conduct.[10]

[9] The issues of whether the members acted in good faith and conducted a reasonable inquiry are not before us. Einhorn does not challenge these conclusions.

[10] A derivative action is defined in Wis. Stat. § 180.0740(2). For a discussion of derivative actions and special litigation committees, *see, e.g.,* John C. Coffee, Jr., and Donald E. Schwartz, *The Survival of the Derivative Suit: An Evaluation and a Proposal for Legislative Reform,* 81 Colum. L. Rev. 261 (1981); Michael P. Dooley and E. Norman Veasley, *The Role of the Board in Derivative Litigation: Delaware Law and the Current ALI Proposals Compared,* 44 Bus. Law. 503 (1989); James L. Rudolph and Gustavo A. del Puerto, *The Special Litigation Committee: Origin, Development, and Adoption Under Massachusetts Law,* 83 Mass. L. Rev. 47 (1998); Meg Shevach, *Deciding Who Should Decide to Dismiss Derivative Suits,* 39 Emory L.J. 937 (1990); Carol B. Swanson, *Juggling Share-*

¶ 17. A derivative action reflects competing interests: On the one hand, the action allows shareholders to assert the corporation's rights when corporate management refuses to do so. On the other hand, the board of directors or majority shareholders of a corporation, not the courts or minority shareholders, should resolve internal conflicts. A derivative action raises the specter of undue judicial interference with the business judgment of corporate management. In other words, a derivative action is a means to curb managerial misconduct, yet it also undermines the basic principle of corporate governance that the decisions of a corporation, including the decision to initiate litigation, should be made by the board of directors.

¶ 18. Courts and legislatures have allowed corporations to use special litigation committees to dismiss derivative actions in an attempt to balance the competing interests at issue: the shareholders' need to protect the corporation and the corporation's need to prevent meritless or harmful litigation.[11] If the special litigation committee is independent from the alleged wrongdoers, acts in good faith and conducts a reasonable inquiry upon which its conclusion is based, the committee's recommendation not to proceed with a derivative action is viewed as a proper exercise of the directors' business judgment and the court will dismiss the action.[12]

---

*holder Rights and Strike Suits in Derivative Litigation: The ALI Drops the Ball*, 77 Minn. L. Rev. 1339 (1993).

[11] 2 Model Business Corporation Act Annotated, Introductory Comment to Subchapter D, Derivative Proceedings, § 7.40 at 7–252–253 (3d ed. 1997 Supp.).

[12] *Holmstrom v. Coastal Indus., Inc.*, 645 F. Supp. 963, 965 (N.D. Ohio 1984).

¶ 19. The concept of the special litigation oversight committee flows from the business judgment rule, a judicially created doctrine that limits judicial review of corporate decision-making when corporate directors make business decisions on an informed basis, in good faith and in the honest belief that the action taken is in the best interests of the company.[13] The business judgment rule shields, to a large extent, the substantive bases for a corporate decision from judicial inquiry. The business judgment rule also ensures that management remains in the hands of the board of directors and protects courts from becoming too deeply implicated in internal corporate matters.[14]

¶ 20. Under Wis. Stat. § 180.0744, the corporation may create a special litigation committee

---

[13] "The concept of the litigation oversight committee flows from the business judgment rule which, in short, constitutes judicial recognition of the fact that a private corporation should, generally speaking, have the right to control its destiny respecting the prosecution of claims held by the corporation." *Holmstrom v. Coastal Indus., Inc.*, 645 F. Supp. 963, 964 (N.D. Ohio 1984).

[14] In *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263–64 (1917), in which Justice Brandeis contemplated the question of whether the business judgment rule could be employed to insulate from judicial scrutiny the conclusions of management not to initiate litigation, he wrote:

Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management, and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion intra vires the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment....

consisting of two or more independent directors appointed by a majority vote of independent directors present at a meeting of the board of directors. The independent special litigation committee determines whether the derivative action is in the best interests of the corporation. If the independent special litigation committee acts in good faith, conducts a reasonable inquiry upon which it bases its conclusions and concludes that the maintenance of the derivative action is not in the best interests of the corporation, the circuit court shall dismiss the derivative action. The statute thus requires the circuit court to defer to the business judgment of a properly composed and properly operating special litigation committee.[15]

¶ 21. The provisions of the Wisconsin statute relevant to the present case read as follows:

180.0744. Dismissal

(1) The court shall dismiss a derivative proceeding on motion by the corporation if the court finds, subject to the burden of proof assigned under sub. (5) or (6), that one of the groups specified in sub. (2) or (6) has determined, acting in good faith after conducting a reasonable inquiry upon which its conclusions are based, that maintenance of the derivative proceeding is not in the best interests of the corporation.

(2) Unless a panel is appointed under sub. (6), the determination in sub. (1) shall be made by any of the following:

. . . .

[15] 2 Model Business Corporation Act Annotated, Introductory Comment to Subchapter D, Derivative Proceedings, § 7.40 at 7–253 (3d ed. 1997 Supp.).

(b) A majority vote of a committee consisting of 2 or more independent directors appointed by majority vote of independent directors present at a meeting of the board of directors, whether or not the voting, independent directors constitute a quorum.

¶ 22. The most common challenge to the decision of a special litigation committee, and the one made in the present case, is that the members are not independent. Given the finality of the ultimate decision of the committee to dismiss the action, judicial oversight is necessary to ensure that the special litigation committee is independent so that it acts in the corporation's best interest.[16] At issue is whether the special litigation committee created in the present case under Wis. Stat. § 180.0744 was composed of independent directors as required by statute.

¶ 23. Although the plain language of Wis. Stat. § 180.0744 requires the directors who are members of the special litigation committee to be independent, the statute does not define the word "independent."[17] Rather, § 180.0744(3) merely instructs that whether a director on the committee is independent should not be determined solely on the basis of any of the following three factors set forth in the statute: (1) whether the director is nominated to the special litigation committee or elected by persons who are defendants in the derivative action, (2) whether the director is a defendant in the action, or (3) whether the act being challenged in the derivative action was approved by

[16] 2 Model Business Corporation Act Annotated, Introductory Comment to Subchapter D, Derivative Proceedings, § 7.40 at 7–253 (3d ed. 1997 Supp.).

[17] The interpretation of a statute is a question of law that this court determines independently of the circuit court and court of appeals, benefiting from their analyses.

the director if the act resulted in no personal benefit to the director.

¶ 24. Wisconsin Stat. § 180.0744(3) provides as follows:

> (3) Whether a director is independent for purposes of this section may not be determined solely on the basis of any one or more of the following factors:
>
> (a) The nomination or election of the director by persons who are defendants in the derivative proceeding or against whom action is demanded.
>
> (b) The naming of the director as a defendant in the derivative proceeding or as a person against whom action is demanded.
>
> (c) The approval by the director of the act being challenged in the derivative proceeding or demand if the act resulted in no personal benefit to the director.

¶ 25. To determine the meaning of the word "independent" in Wis. Stat. § 180.0744, we examine the language of the statute, and its history, context, subject matter and purpose. *See UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 282, 548 N.W.2d 57 (1996).

¶ 26. The factors identified in Wis. Stat. § 180.0744(3) that cannot be *solely* determinative of whether a director is independent would appear at first blush to render a director not independent. For example, by instructing a court that whether a director is independent may not be determined solely on the basis that the director is a named defendant in the derivative action, Wis. Stat. § 180.0744(3)(b) appears to direct a court to adopt a relaxed, lenient standard for the word "independent." Relying on this subsection and reviewing the legislative history, the circuit court concluded that "the threshold established by the legislature is

extremely low. This conclusion is inescapable under a statute where a director who is a defendant in a derivative suit cannot be excluded from an independent committee by that fact alone."[18]

¶ 27. A more nuanced examination of the statute shows, however, that the circuit court's reliance on Wis. Stat. § 180.0744(3) for an "extremely low threshold" standard is incorrect. The legislature understood the significance of the factors it listed. It allows the circuit court to give weight to these factors; the statute simply states that the presence of one or more of these factors is not solely determinative of the issue of whether a director is independent.

¶ 28. The legislature recognized, for example, that a shareholder could prevent the entire board of directors from serving on the special litigation committee merely by naming all the directors as defendants in the derivative action. Section 180.0744(3)(b) instructs

---

[18] The circuit court declared:

While reasonable persons may take issue in a generic sense with the findings made above [regarding the independence of the members of the special litigation committee], what is abundantly clear from the record and not even subject to interpretation is that the criteria for independence established under Wisconsin Statute 180.0744(3) was met. Indeed, independence is so broadly defined that the independence of a director may not be judged solely upon: (1) whether a director was elected by a defendant in the derivative suit, (2) whether an elected director is a defendant in the suit, or (3) whether an elected director approved of the challenged act, as long as that director received no personal benefit from the act.

After a review of the legislative history submitted by the plaintiff, there does not appear to be anything within that history of the statute that would challenge the conclusion that the threshold established by the legislature in determining independence is extremely low. The conclusion is inescapable under a statute where a director who is a defendant in a derivative suit cannot be excluded from an independent committee by that fact alone.

a court to examine whether a director who is a member of the special litigation committee is a nominal defendant or a defendant with a personal interest in the dispute. The statute thus instructs the court that this factor is not solely determinative.

¶ 29. The Official Comment to § 7.44 of the Model Business Corporation Act upon which Wis. Stat. § 180.0744 is based[19] explains that "the mere fact that a director has been named as a defendant. . .does not cause the director to be considered not independent. . . .It is believed that a court will be able to assess any actual bias in deciding whether the director is independent without any presumption arising out of. . .the mere naming of the director as a defendant. . . ."[20]

¶ 30. We conclude that the circuit court's interpretation that the statute sets forth an "extremely low" threshold for determining whether a director is independent does not comport with the statute. The legislature directs in Wis. Stat. § 180.0744(3) that a court is not to adopt a *per se* exclusion of directors from the special litigation committee when these directors have certain relations with the corporation. Instead

---

[19] A court may examine official comments that accompany a statute to determine legislative intent. *See, e.g., Armor All Prod. v. Amoco Oil Co.*, 194 Wis. 2d 35, 50, 533 N.W.2d 720 (1995); *Sterman v. Hornbeck*, 156 Wis. 2d 556, 564, 457 N.W.2d 874 (Ct. App. 1990) (examining Model Business Corporation Act to interpret statute); *Lyons v. Menominee Enter., Inc.*, 67 Wis. 2d 504, 509, 227 N.W.2d 108 (1975) (same).

[20] *See* 2 Model Business Corporation Act Annotated, Official Comment to § 7.44 at 7–343 (3d ed. 1997 Supp.). The Official Comment refers to subsection (c)(2) of § 7.44 of the Model Business Corporation Act. The Wisconsin legislature renumbered the Act while retaining the language of (c)(2) verbatim, and references in this opinion are to Wis. Stat. § 180.0744(3)(b).

the legislature directs a court to examine the characteristics of each member's relationship to a defendant director and the corporation carefully to determine whether the member is independent.

¶ 31. The statute requires judicial adherence to the decision of a special litigation committee that is independent and is operating in accordance with the statute. Judicial review to determine whether the members of the committee are independent and whether the committee's procedure complies with the statute is of utmost importance, because the court is bound by the substantive decision of a properly constituted and acting committee. The power of a corporate defendant to obtain a dismissal of an action by the ruling of a committee of independent directors selected by the board of directors is unique in the law.[21] The threshold established by the legislature in Wis. Stat. § 180.0744 to determine whether members of a committee are independent is decidedly not "extremely low," as the circuit court stated. We conclude the legislature intended a circuit court to examine carefully whether members of a special litigation committee are independent.

¶ 32. The legislative history of Wis. Stat. § 180.0744 supports our interpretation of the word "independent" and the role of the circuit court.[22]

¶ 33. Wisconsin Stat. § 180.0744 is based on § 7.44 of the Model Business Corporation Act,[23] which

---

[21] *Lewis v. Fuqua*, 502 A.2d 962, 967 (Del. Ch. 1985).

[22] The legislative history of Wis. Stat. § 180.0744 is available on microfiche at the Legislative Reference Bureau, Madison, Wisconsin.

[23] *See* Christopher S. Berry, Kenneth B. Davis, Jr., Frank C. DeGuire and Clay R. Williams, *Wisconsin Business Corporation Law* at 7–107 (State Bar of Wisconsin CLE Books 1992).

was adopted in 1989. The Wisconsin version of the Model Business Corporation Act, Wis. Stat. § 180.0744, was created by 1991 Act 16, § 27, effective May 13, 1991. Thus our inquiry into the meaning of the word "independent" under the Wisconsin statute considers the history of the enactment of both the Wisconsin statute and the Model Business Corporation Act.

¶ 34. The language of Wis. Stat. § 180.0744(1), as originally adopted, differed from § 7.44 of the Model Business Corporation Act in its final phrase. The final phrase of § 180.0744(1) as originally adopted, in contrast to the Model Business Corporation Act, provided that a court shall adhere to the decision of the special litigation committee to dismiss the derivative action **"unless the court finds that the members of the group so voting were not independent or were not acting in good faith"**[24] (emphasis added).

---

[24] The original enactment of Wis. Stat. § 180.0744(1) provided:

> (1) The court shall dismiss a derivative proceeding on motion by the corporation if one or more of the groups specified in sub. (2) or (6) has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that maintenance of the derivative proceeding is not in the best interests of the corporation, **unless the court finds that the members of the group so voting were not independent or were not acting in good faith** (emphasis of the final phrase added).

*See* 1991 Wis. Act 16, § 27.

Section 7.44(a) of the Model Business Corporation Act reads as follows:

> (a) A derivative proceeding shall be dismissed by the court on motion by the corporation if one of the groups specified in subsections (b) or (f) has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation.

¶ 35. According to the bill-drafting file for Wis. Stat. § 180.0744, the purpose of the final clause, which could be considered merely redundant, was to make explicit that under the statute a court is to examine the rationality of the decision-making process and whether the members of the group were independent and acted in good faith.[25] The final clause "strikes a proper balance between shareholders' rights and the business judgment principle of corporate governance."[26]

¶ 36. According to the legislative history, the statute does not dictate judicial adherence to the decision of a special litigation committee unless the committee members are independent under the statute.[27] A court is required to adhere to the decision of the special litigation committee regarding dismissal of a derivative action on the ground that the committee's decision constitutes a matter of business judgment delegated by the board of directors to the committee. Thus, under the Wisconsin statute, judicial oversight is necessary to determine whether the members of the special litigation committee are independent.

[25] Letter from Attorney Jeffrey Bartell to Senator Charles Chvala dated January 23, 1991, Bill-Drafting File, 1991 Wis. Act 16, Legislative Reference Bureau, Madison, Wisconsin.

[26] Letter from Attorney Jeffrey Bartell to Senator Charles Chvala dated January 23, 1991, Bill-Drafting File, 1991 Wis. Act 16, Legislative Reference Bureau, Madison, Wisconsin.

[27] In *Houle v. Low*, 556 N.E.2d 51, 58 (Mass. 1990), the Massachusetts Supreme Judicial Court explained:

The value of a special litigation committee is coextensive with the extent to which that committee truly exercises business judgment. In order to ensure that special litigation committees do act for the corporation's best interest, a good deal of judicial oversight is necessary in each case. . . .At a minimum, a special litigation committee must be independent, unbiased, and act in good faith.

¶ 37. In October 1991, the Committee on Business Corporation Law of the State Bar of Wisconsin sought amendment of Wis. Stat. § 180.0744(1), as the attorneys explained, to retain the purpose of the final phrase but to clarify that the final phrase of the Wisconsin statute did not change the burden of proof set forth in the statute.[28] The amendment proposed by the lawyers, described as "nonsubstantive and 'housekeeping' in nature," and adopted by the legislature, thus expressly retains the concept of judicial review of whether members of the special litigation committee are independent.[29]

¶ 38. The legislative history contradicts the conclusion of the circuit court and court of appeals in the present case that the legislature intended an "extremely low" threshold for determining whether members of a special litigation committee are independent. The legislative history of Wis. Stat. § 180.0744 demonstrates the legislature's intent that the courts scrutinize whether the members of a special litigation committee are independent in order to protect the shareholders' and the corporation's interests.

## III

¶ 39. We now discuss the appropriate test to be applied to determine whether directors who are members of a special litigation committee are independent

---

[28] Memorandum to the Committee on Business Corporation Law from Jeffrey Bartell and Molly Martin dated October 31, 1991, Bill-Drafting File, 1991 Wis. Act 16, Legislative Reference Bureau, Madison, Wisconsin.

[29] *See* 1991 Wis. Act 173, § 2 (effective April 28, 1992).

*See also* Christopher S. Berry, Kenneth B. Davis, Jr., Frank C. DeGuire and Clay R. Williams, *Wisconsin Business Corporation Law* at 7–116 (State Bar of Wisconsin CLE Books 1992).

under Wis. Stat. § 180.0744. This question is one of first impression in Wisconsin. Nothing in the statute expressly states the factors to be examined to determine whether directors who are members of a committee are independent.

¶ 40. The Model Business Corporation Act (upon which Wis. Stat. § 180.0744 is based) builds on the law relating to special litigation committees developed by a number of states. We are therefore informed by the case law of other states,[30] and we derive from this case law the following test to determine whether a member of a special litigation committee is independent.[31]

¶ 41. Whether members are independent is tested on an objective basis[32] as of the time they are

[30] *See* 2 Model Business Corporation Act Annotated, Official Comment to § 7.44 at 7–341–349 (3d ed. 1997 Supp.).

[31] For discussions and applications of various versions of this test, *see, e.g., Strougo v. Padys*, 27 F. Supp. 2d 442, 448–451 (S.D.N.Y. 1998); *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1441–42 (N.D. Cal. 1994); *Johnson v. Hui*, 811 F. Supp. 479, 486–87 (N.D. Cal. 1991); *Peller v. The Southern Co.*, 707 F. Supp. 525, 527–38 (N.D. Ga. 1988); *Kaplan v. Wyatt*, 499 A.2d 1184, 1189–90 (Del. 1985); *Aronson v. Lewis*, 473 A.2d 805, 814–16 (Del. 1984); *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1980); *Millsap v. American Fam. Corp.*, 430 S.E.2d 385, 387–88 (Ga. Ct. App. 1993); *Houle v. Low*, 556 N.E.2d 51, 58–59 (Mass. 1990); *Auerbach v. Bennett*, 393 N.E.2d 994, 1001–02 (N.Y. 1979); *Davidowitz v. Edelman*, 583 N.Y.S.2d 340, 343–44 (N.Y. Sup. Ct. 1992); *Lewis v. Boyd*, 838 S.W.2d 215, 224–25 (Tenn. Ct. App. 1992). *See also* James L. Rudolph & Gustavo A. del Puerto, *The Special Litigation Committee: Origin, Development, and Adoption Under Massachusetts Law*, 83 Mass. L. Rev. 47, 51–52 (1998).

[32] "[Courts] have looked to an array of objective factors. . .as criteria for evaluating the disinterestedness and independence

appointed to the special litigation committee.[33] Considering the totality of the circumstances, a court shall determine whether a reasonable person in the position of a member of a special litigation committee can base his or her decision on the merits of the issue rather than on extraneous considerations or influences.[34] In other words, the test is whether a member of a committee has a relationship with an individual defendant or the corporation that would reasonably be expected to affect the member's judgment with respect to the litigation in issue. The factors a court should examine to determine whether a committee member is independent include, but are not limited to, the following:

(1) *A committee member's status as a defendant and potential liability.* Optimally members of a special litigation committee should not be defendants in the derivative action and should not be exposed to personal liability as a result of the action.

(2) *A committee member's participation in or approval of the alleged wrongdoing or financial benefits from the challenged transaction.* Optimally members of a special litigation committee should not have been members of the board of directors when the transaction in question occurred or was

of directors. . . ." 1 Roger J. Magnuson, *Shareholder Litigation* § 8.17.60 (1993).

[33] An independent member might stop being independent while serving on a special litigation committee.

[34] This standard for determining whether a person is independent fits the dictionary definitions of independent. *Black's Law Dictionary* at 774 (7th ed. 1999) defines "independent" as "not subject to the control or influence of another." The *American Heritage Dictionary of the English Language* at 917 (3d ed. 1992) defines "independent" as, among other things, "free from the influence, guidance, or control of another or others."

approved. Nor should they have participated in the transaction or events underlying the derivative action. Innocent or *pro forma* involvement does not necessarily render a member not independent, but substantial participation or approval or personal financial benefit should.

(3) *A committee member's past or present business or economic dealings with an individual defendant.* Evidence of a committee member's employment and financial relations with an individual defendant should be considered in determining whether the member is independent.

(4) *A committee member's past or present personal, family, or social relations with individual defendants.* Evidence of a committee member's non-financial relations with an individual defendant should be considered in determining whether the member is independent. A determination of whether a member is independent is affected by the extent to which a member is directly or indirectly dominated by, controlled by or beholden to an individual defendant.

(5) *A committee member's past or present business or economic relations with the corporation.* For example, if a member of the special litigation committee was outside counsel or a consultant to the corporation, this factor should be considered in determining whether the member is independent.

(6) *The number of members on a special litigation committee.* The more members on a special litigation committee, the less weight a circuit court may assign to a particular disabling interest affecting a single member of the committee.

(7) *The roles of corporate counsel and independent counsel.* Courts should be more likely to find a special litigation committee independent if the

committee retains counsel who has not represented individual defendants or the corporation in the past.[35]

¶ 42. Some courts and commentators have suggested that a "structural bias" exists in special litigation committees that taints their decisions.[36] They argue that members of a committee, appointed by the directors of the corporation, are instinctively sympathetic and empathetic towards their colleagues on the board of directors and can be expected to vote for dismissal of any but the most egregious charges. They assert that the committees are inherently biased and untrustworthy.[37] Wisconsin Stat. § 180.0744 and the Model Business Corporation Act are designed to combat this possibility.[38]

¶ 43. Wisconsin Stat. § 180.0744 requires that only independent directors vote to create a special litigation committee and only independent directors serve on the committee. The statute recognizes that independent directors serving as members of a special

[35] For a discussion of cases involving the independent standard for members of special litigation committees, *see* Jay M. Zitter, *Propriety of Termination of Properly Initiated Derivative Action by "Independent Committee" Appointed by Board of Directors Whose Actions (Or Inaction) Are Under Attack*, 22 A.L.R. 4th (1983 and 1999 Supp.).

[36] *See, e.g., Houle v. Low*, 556 N.E.2d 51, 54 (Mass. 1990); *Miller v. Register & Tribune Syndicate Inc.*, 336 N.W.2d 709, 718 (Iowa 1983); Carol B. Swanson, *Juggling Shareholder Rights and Strike Suits in Derivative Litigation: The ALI Drops the Ball*, 77 Minn. L. Rev. 1339, 1356–59 (1993).

[37] *See, e.g.,* George W. Dent, Jr., *The Power of Directors to Terminate Shareholder Litigation: The Death of the Derivative Suit?*, 75 Nw. U. L. Rev. 96, 98 (1980).

[38] *See* 2 Model Business Corporation Act Annotated, Official Comment to § 7.44 at 7–342 (3d ed. 1997 Supp.).

litigation committee are capable of rendering an independent decision even though they are members of the board of directors which includes defendants in the derivative action.

¶ 44.　A court should not presuppose that a special litigation committee is inherently biased. Although members of a special litigation committee may have experiences similar to those of the defendant directors and serve with them on the board of directors, the legislature has declared that independent members of a special litigation committee are capable of rendering an independent decision. The test we set forth today is designed, as is the statute, to overcome the effects of any "structural bias."

¶ 45.　A circuit court is to look at the totality of the circumstances. A finding that a member of the special litigation committee is independent does not require the complete absence of any facts that might point to non-objectivity. A director may be independent even if he or she has had some personal or business relation with an individual director accused of wrongdoing.[39] Although the totality of the circumstances test does not necessitate the complete absence of any facts that

---

[39] *See In re Oracle Securities Litigation*, 852 F.Supp 1437, 1442 (N.D. Cal. 1994), stating:

A "totality of the circumstances" test does not, however, necessitate the complete absence of any facts which might point to non-objectivity. In any business setting, associations and contacts of the type which [the committee member] has had with some of the individual defendants and [the corporation] are certainly neither inappropriate nor such as to suggest that [the committee member] would not faithfully discharge his obligations to [the corporation's] shareholders. Business dealings seldom take place between complete strangers and it would be a strained and artificial rule which required a director to be unacquainted or uninvolved with fellow directors in order to be regarded as independent.

might point to a member not being independent, a circuit court is required to apply the test for determining whether a member is independent with care and rigor. If the members are not independent, the court will, in effect, be allowing the defendant directors to render a judgment on their own alleged misconduct. The value of a special litigation committee depends on the extent to which the members of the committee are independent.

¶ 46. It is vital for a circuit court to review whether each member of a special litigation committee is independent. The special litigation committee is, after all, the "only instance in American Jurisprudence where a defendant can free itself from a suit by merely appointing a committee to review the allegations of the complaint. . . ."[40] We agree with the Delaware Court of Chancery that the trial court must be "certain that the SLC [special litigation committee] is truly independent."[41] While ill suited to assessing business judgments, courts are well suited by experience to evaluate whether members of a special litigation committee are independent.

¶ 47. The test we set forth attains the balance the legislature intended by empowering corporations to dismiss meritless derivative litigation through special litigation committees, while checking this power with appropriate judicial oversight over the composition and conduct of the special litigation committee.

## IV

¶ 48. The circuit court declined to grant summary judgment for the defendant because there was a

[40] *Lewis v. Fuqua*, 502 A.2d 962, 967 (Del. Ch. 1985).
[41] *Lewis v. Fuqua*, 502 A.2d 962, 967 (Del. Ch. 1985).

dispute of material facts. After seven days of testimony on the issue of whether the members of the special litigation committee were independent, the circuit court made findings of fact and concluded that the threshold the legislature established for determining whether the members of the committee were independent is "extremely low." Applying this "extremely low" standard, the circuit court determined that the members of the special litigation committee in the present case were independent.[42]

¶ 49. We briefly explore the relations of the members of the special litigation committee to the corporation and the defendant Culea. In this case no member of the special litigation committee is a named defendant in the derivative action.

¶ 50. One member of the committee, Robert Bonk, received a $25,000 bonus at the same meeting of the compensation committee at which Culea's challenged bonus was approved. The circuit court found that "while [Bonk] did receive a bonus at the same meeting of the board where Mr. Culea received his bonus, it does not appear that there was a quid pro quo or any other type of linkage between the two bonuses. In fact, it should be noted that the plaintiff [Einhorn] has not made Bonk's $25,000 bonus a subject of this lawsuit." Einhorn has made the bonus an issue in this court.

---

[42] The question of which party has the burden of proving, Wis. Stat. § 180.0744(5), whether members of the special litigation committee in the present case were independent has been raised in this case. At the trial before the circuit court, plaintiff Einhorn presented his case first. We do not address the issue of burden of proof because it was not fully analyzed or fully briefed by the parties.

¶ 51. Bonk is an employee of the corporation, is a subordinate of Culea and considers Culea a friend. Bonk acknowledged that it would be "very difficult for [him] to even consider the possibility that Mr. Culea would do something improper. . . ."[43] Bonk's ability to independently evaluate the litigation may have been compromised by his own admission. The circuit court merely stated that "with the exception of him being an employee of Northern Labs, this Court fails to find any inherent basis upon which his independence could be challenged."

¶ 52. Outside counsel retained by the special litigation committee questioned whether Robert Bonk was independent: "[Bonk's] independence is questionable. . . . Because his interests in the financial outcome would [strikethrough in original] was affected but it is such a small amount. . . .The input of [Bonk] throughout the process may taint the vote because his independence may be questioned."[44] Whether Bonk was independent should be determined on the basis of his employment status, his financial interest in the outcome and his personal relation with Culea.

¶ 53. Another member of the committee, John Beagle, was characterized by the circuit court as Einhorn's "right-hand man." Beagle admitted that he and Einhorn "have a very good business relationship" and are "also very good friends." Beagle wrote, in explaining his lone vote to maintain the derivative action, that "the special litigation committee is not, and never was, unbiased or independent. . .each of us is too close to one party or the other to have a chance at being indepen-

---

[43] *See* 12/19/96 Bonk testimony, R. 206 at 35 (reproduced at Einhorn's Appendix at 168).

[44] *See* "Chewning Notes of 5/22/95 Conversations With Outside Counsel," Einhorn's Appendix at 95.

dent. . . ."[45] John Beagle, plaintiff Einhorn's good friend and close business partner, openly admits that he was not independent.[46]

¶ 54. The other two members of the special litigation committee had personal and social relationships with Culea and Culea's wife. Einhorn argues strenuously that Culea's neighbor and friend, Dwight Chewning, and Culea's wife's friend, Lolita Chua, were not independent. The exact extent of these friendships is vigorously contested by the parties, but the existence of some relationship is evidenced in the record.

¶ 55. The circuit court did not make findings of fact specifying the relationships of Chewning and Chua to Culea other than describing Chewning as a "neighbor" and Chua as a "social friend" of Mrs. Culea. In its discussion of Chewning and Chua, the circuit court examined their performance as witnesses and as members of the special litigation committee. While the care, attention and sense of individual responsibility of a member may touch on the issue of whether the member was independent, the test is primarily concerned with whether factors exist at the time the committee was formed that would prevent a reasonable person from

[45] *See* letter from Beagle to Chewning, June 14, 1995, Einhorn's Appendix at 127.

[46] At oral argument, counsel for Culea asserted that Einhorn's trial counsel conceded that Beagle was independent. It was only when new appellate counsel was hired, Culea argues, that Einhorn challenged whether Beagle was independent.

Wisconsin Stat. § 180.0744(3) focuses the inquiry of "independent" on the connections of a member of a special litigation committee to an individual defendant and the corporation, not on the connections with a plaintiff. *See* Wis. Stat. § 180.0744(3). We do not address the issue of a member's relationship with the plaintiff.

basing his or her decisions on the merits of the issue. Whether members of the special litigation committee are independent is critical. "Good faith, reasonable inquiry, and the best interests of the corporation are not enough."[47]

¶ 56. As we stated previously, mere acquaintanceship and social interaction are not *per se* bars to finding a member independent. Relationships with an individual defendant and the corporation are, however, factors the circuit court must consider in the totality of circumstances.

¶ 57. Einhorn also argues strenuously that the role of the corporation's counsel tainted the formation of the special litigation committee, in that the corporation's counsel was acting both as Culea's personal counsel and as the corporation's counsel. Relatively late in its investigation the special litigation committee retained a separate law firm from Washington, D.C., to act as its counsel. But the exact extent of the corporation's counsel's role in advising the special litigation committee is contested. The circuit court did not make findings about the roles of the corporation's counsel and outside counsel. The role of the corporation's counsel should be considered as one of the circumstances in determining whether the committee is independent. Several courts have stated that retention of objectively independent counsel is highly recommended, although failure to do so does not necessarily prevent a special litigation committee from being independent.[48]

---

[47] *See* Christopher S. Berry, Kenneth B. Davis, Jr., Frank C. DeGuire and Clay R. Williams, *Wisconsin Business Corporation Law* at 7–116 (State Bar of Wisconsin CLE Books 1992).

[48] *See, e.g., In re Par Pharm. Inc.*, 750 F. Supp. 641, 647 (S.D.N.Y. 1990) ("Both New York and Delaware law contemplate that a special litigation committee be represented by

¶ 58. The circuit court did not apply the totality of the circumstances standard to determine whether a reasonable person in the position of the member of the special litigation committee could base his or her decision on the merits of the issue rather than on extraneous conditions or influences. Considered together, the relationships in the present case raise significant questions concerning whether the members of the special litigation committee were independent.[49]

independent counsel."); *Kaplan v. Wyatt*, 499 A.2d 1184, 1190 (Del. 1985) (although use of in-house counsel is not recommended, it is not fatal to the special litigation committee's investigation).

A comment to Wis. SCR 20:1.13 of the Code of Professional Conduct states the following about derivative actions:

> The question can arise whether counsel for the organization may defend such an action. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, Rule 1.7 [relating to conflict of interest] governs who should represent the directors and the organization.

[49] Wisconsin Stat. § 180.0744 draws no distinction between publicly held corporations and closely held corporations. *See* §§ 180.1801–180.1837 relating to close corporations. We acknowledge that it may be difficult for closely held corporations to assemble special litigation committees. If it is difficult for the corporation to create an independent special litigation committee, the remedy has been provided by the legislature. The corporation may move the court, pursuant to Wis. Stat. § 180.0744(6), to "appoint a panel of one or more independent persons to determine whether maintenance of the derivative proceedings is in the best interests of the corporation."

The decision of this court is not intended to cast doubt on any committee member's integrity, honesty or hard work on the special litigation committee. Rather, we are concerned that, at the time of the formation of the special litigation committee, the members of the committee had relationships with the individual defendant and the corporation that call into question whether a reasonable person could base his or her decision on the merits of the issue rather than on extraneous considerations or influences.

■

¶ 59. The application of a statute to undisputed facts is ordinarily a question of law that this court determines independently of the circuit court and the court of appeals, benefiting from the analyses of these courts. But in this case the facts are in dispute, and the circuit court has not made sufficient findings of fact upon which this court can apply the legal test set forth. Accordingly, we remand the cause to the circuit court to make findings of fact and to apply the proper legal standard to the facts of this case.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.