*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2013 UT 33**

In The

# SUPREME COURT OF THE STATE OF UTAH

HI-COUNTRY PROPERTY RIGHTS GROUP, LINDSAY ATWOOD, JERRY GILMORE, and BRANDON FRANK, individually and for and on behalf of HI-COUNTRY ESTATES HOMEOWNERS ASSOCIATION, PHASE II, a Utah non-profit corporation,
*Plaintiffs and Appellants,*

*v.*

KEITH EMMER, TOM WILLIAMS, ANTHONY SARRA, ARLENE JOHNSON, CAROL DEAN, HI-COUNTRY ESTATES HOMEOWNERS ASSOCIATION, PHASE II, a Utah non-profit corporation; and DOES 1-100,
*Defendants and Appellees.*

No. 20120202
Filed June 7, 2013

Third District, Salt Lake
The Honorable Tyrone E. Medley
No. 090920250

Attorneys:

Troy L. Booher, Clemens A. Landau, Wade R. Budge, Michael J. Thomas, Salt Lake City, for appellants.

Glenn C. Hanni, Stuart H. Schultz, Salt Lake City, for appellees.

JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING, JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1 This is an appeal from the dismissal of a derivative suit against the directors of a homeowners association. The derivative plaintiffs are disgruntled property owners who allege that the directors favored their own properties in allocating limited road construction and maintenance funds.

¶2   Instead of defending on the merits, the directors sought to avail themselves of the procedure set forth in Utah Code section 16-6a-612(4)—a provision allowing the board to appoint an independent committee to evaluate whether maintenance of a derivative suit is in the best interest of the nonprofit corporation. The committee appointed by the directors consisted of two current members and one former member of the board. All owned property allegedly receiving preferential treatment. Following an investigation, the committee issued a detailed report. Based on this report, the board sought to have the suit dismissed under section 612(4)(a). The district court dismissed the suit and the plaintiffs appealed, asserting that the district court erred in concluding that the members of the committee were "independent" under section 612(4).

¶3   We agree and now reverse. We find error in the standard of "independence" applied in the court below, and take this opportunity to clarify the standard that governs under section 612(4). And under that standard, we conclude that unresolved factual issues relating to the independence of the committee members make it impossible for us to make this mixed-question determination in the first instance on appeal. We accordingly remand for further proceedings not inconsistent with this opinion.

I

¶4   Hi-Country Estates Homeowners Association (HOA) is a nonprofit corporation that provides road maintenance and other services to the Hi-Country Estates Phase II development near Herriman. The HOA funds its activities by levying annual assessments on all development property owners, and a high percentage of these assessment proceeds are used for road construction and maintenance. A five-person board of directors controls the allocation of these funds.

¶5   Several property owners brought a derivative suit on behalf of the HOA against the board's five directors—Keith Emmer, Tom Williams, Anthony Sarra, Arlene Johnson, and Carol Dean. These plaintiff property owners—who owned property in Area D, which was only accessible by foot, horseback, or ATV—alleged in a verified complaint that the directors had breached their fiduciary duties by selectively choosing to construct and maintain roads to benefit their own properties, thus disadvantaging the plaintiffs.

¶6    Pursuant to Utah Code section 16-6a-612(4), the directors responded by appointing a special committee to investigate the plaintiffs' claims. This provision allows a corporation to appoint a "committee consisting of two or more independent directors" to determine whether the derivative suit is in the "best interest of the nonprofit corporation." If an independent committee determines that such a suit is "not in the best interest of the nonprofit corporation," then the statute provides that the "derivative proceeding shall be dismissed by the court on motion by the corporation." UTAH CODE § 16-6a-612(4).

¶7    The special committee appointed by the HOA consisted of two current directors, Arlene Johnson and Anthony Sarra, and one former director, Kim Wilson (who had served on the board from 1994 to 1999). Both Johnson and Sarra had been involved in making the road maintenance and construction decisions that the plaintiffs sought to challenge. Wilson too had been involved in making similar decisions during his time serving on the board. All three of the members of the special committee also owned lots that were alleged by the plaintiffs to have received preferential treatment.[1] In addition, Wilson had some level of social engagement with members of the board and had previously worked for Sunrise Engineering, Inc., one of the companies used by the HOA for its road maintenance projects.

¶8    Together, the committee completed an investigation into the derivative complaint and authored a report. Mr. Emmer, the board's president, read the report and recommended to the other board members that the suit be dismissed. The board voted to recommend dismissal to the district court. Sarra and Johnson abstained from this vote.

¶9    The property owners opposed the motion and requested time to conduct additional discovery under rule 56(f) of the Utah Rules of Civil Procedure. The district court granted this motion, and after further discovery, the board renewed its motion to dismiss, asserting that the "undisputed material facts show that the board members acted in good faith, with the care of ordinarily

---

[1] All own lots located on Shaggy Mountain Road, a gravel road maintained by the HOA. Shaggy Mountain Road is accessible via Mountain Top Road, a paved road maintained by the HOA.

prudent persons, and in a manner reasonably believed to be in the best interests of the nonprofit corporation."

¶10 The district court granted the directors' motion. That motion had urged the court to treat the motion to dismiss as "one for summary judgment" since it "present[ed] matters outside the pleadings." And the district court did so, applying a summary judgment standard in determining that "[t]here are no genuine issues of material fact with respect to the independence of the members of the SLC." The court concluded that "board membership" and "being named as a director defendant" were insufficient to call into question the independence of Arlene Johnson and Anthony Sarra. And it further determined that Wilson's independence was not called into question by the "casual social relationship" and "business relationship" he had with other members of the board, since both were "limited in nature."

¶11 The district court accordingly held that the committee had "made a determination in good faith, conducted a reasonable inquiry upon which its decision was based," and that there was a "reasonable basis for the [committee's] conclusion that the derivative proceeding [was] not in the best interest of the [HOA]." The plaintiff property owners appealed.

II

¶12 The appellant property owners[2] challenge the dismissal of their suit on several grounds. Their principal contention, however, is that the special committee appointed by Hi-Country's board was not independent within the meaning of Utah Code section 16-6a-612(4).[3] We find error in the standard of "independence" applied by the district court, and reverse on that basis.

---

[2] The HOA is the nominal appellant because this is a derivative suit. *See* UTAH CODE § 16-6a-612(1) ("[A derivative] proceeding may be brought in the right of a nonprofit corporation to procure a judgment in its favor by a complainant who is . . . a voting member . . . ."). For clarity, however, we refer to the property owners as the appellants, given their role in pressing arguments on behalf of the HOA.

[3] They also argue that the committee failed to conduct a "reasonable inquiry" within the meaning of section 612(4)(a). We find no fault with the district court's decision upholding the reasona-

¶13 We do so under a standard of review that affords some deference to the district court's ultimate determination of independence (but not to the legal standard forming the premise of its decision). As explained in greater detail below, the decision to dismiss a derivative suit under Utah Code section 16-6a-612(4)(a) involves several mixed determinations, *see Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶ 40, __ P.3d __ — including an assessment of whether special litigation committee members are "independent" within the meaning of Utah Code section 16-6a-612(4)(b). And because, as clarified below, "independence" determinations depend on the "particular facts and circumstances" of each case, these assessments would generally be entitled to some measure of deference. *See id.* ¶ 43.

¶14 In this case, however, the district court exceeded whatever breathing room this deferential review standard generally affords. It did so by committing two legal errors.[4] First, the court misapprehended the meaning of "independence" under section 612(4)(b) — and thus applied the wrong legal standard in assessing the committee's independence. The court also committed a second

---

bleness of the committee's inquiry, however. The committee's investigation was substantial. It (1) "review[ed] the complaint documents, meeting minutes, governing documents, email communication, miscellaneous other communication, statistical data and" records of past expenditures; (2) conducted at least twelve telephonic, in-person and/or written interviews; (3) mailed a postcard to all who owned property in the development, expressing a desire to discuss issues related to the litigation; (4) "completed a study comparing the volume of traffic on different roads within the association with the amount of money spent on the roads over the past fifteen years"; and (5) compiled a report that was more than forty-pages long and was supported by many pages of supporting documentation.

[4] Accordingly, we do not need to determine exactly how much deference such assessments would generally be afforded. *See Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶¶ 42–44, __ P.3d __ (stating that the degree of deference afforded to mixed questions varies and explaining how to determine the degree of deference to afford to different types of these determinations).

error by invoking an improper procedural mechanism (summary judgment) in ruling on the corporation's motion to dismiss—a mechanism we find incompatible with section 612(4)(a). And because the court left unresolved a number of factual issues relevant to the independence inquiry in applying this summary judgment standard, we cannot make that assessment in the first instance on appeal. We accordingly remand so the district court can do so. Because we remand, we also reach another of the property owners' arguments—and clarify that the special committee, not the board of directors, was required to independently recommend dismissal of the derivative suit.

A

¶15   Utah Code section 16-6a-612(4) prescribes mechanisms that boards of nonprofit corporations may employ to avoid merits litigation of derivative suits. Subsection (4)(a) provides that a derivative proceeding "shall be dismissed by the court on motion by the corporation if a person or group specified in Subsection (4)(b) . . . determines in good faith, after conducting a reasonable inquiry upon which the person's or group's conclusions are based, that the maintenance of the derivative proceeding is not in the best interest of the nonprofit corporation." Subsection (4)(b)(ii), in turn, states that the determination may be made by "a majority vote of a committee consisting of two or more *independent* directors appointed by a majority vote of independent directors present at a meeting of the board of directors, whether or not the independent directors appointing the committee constituted a quorum." (Emphasis added.)[5]

---

[5] On appeal, the owners also challenge the mechanism used to appoint the special litigation committee, arguing that the committee's appointment was suspect because the appointing board members were not independent. This argument was not preserved, however, and we decline to reach it. Although the owners made arguments regarding the independence of the directors in asserting that the directors should bear the burden of proof under section 612(4)(e) (and thus preserved that argument), they never challenged the mechanism used to appoint the special litigation committee. That question is accordingly not properly before us, as the district court never had an "opportunity to rule on the issue." *Kell v. State*, 2012 UT 25, ¶ 11, 285 P.3d 1133.

¶16 The district court determined that all the requirements of subsection (4)—including the independence requirement—had been satisfied as a matter of law. The owners assert that this was error, arguing that the independence of the committee members was called into question by a number of facts, including that all three members of the committee own property bordering on the roads that allegedly received preferential treatment.

¶17 We agree. Although the Nonprofit Corporation Act does not define the term "independent," *see* UTAH CODE § 16-6a-612(4)(b), we discern an operative standard from dictionary definitions of the term and from other textual and contextual cues within the statute: Special committees are independent only if there is a reasonable likelihood that they are able to "base[]" their decision regarding a derivative suit "upon" a "reasonable inquiry" designed to assess whether that suit is in "the best interest of the nonprofit corporation," UTAH CODE § 16-6a-612(4)(a), and not on self-interest, pressure from an outside source, or some other motivation. And under this notion of "independence," the plaintiff homeowners' allegations at least call into question the independence of the special committee members—although unresolved factual issues stemming from the district court's application of the summary judgment standard prevent us from making this independence assessment in the first instance on appeal.

1

¶18 The operative term of the Nonprofit Corporation Act is that requiring that members of a special committee be "independent." UTAH CODE § 16-6a-612(4)(b). Because that term is not expressly defined in the Act,[6] and does not appear to be a technical term of

---

[6] This is in contrast to the Model Nonprofit Corporation Act, which contains a provision—nearly identical to the one in section 612(4)(b)—permitting a special committee of "independent directors" to recommend dismissal of a derivative suit. MODEL NONPROFIT CORP. ACT § 13.05(a)–(b) (2008). The model act defines an "independent director" as one who "does not have: (1) a material interest in the outcome of the proceeding, or (2) a material relationship with a person who has such an interest." *Id.* § 13.05(f). A "material interest" is defined as "an actual or potential benefit or detriment, other than one that would devolve on the nonprofit

art, we construe it to partake of "the ordinary meaning" the word "would have to a reasonable person familiar with the usage and context of the language in question." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9 & n.3, 248 P.3d 465 (citing Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 HARV. L. REV. 417, 417–18 (1899) ("[W]e ask, not what this man meant, but what those words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used . . . .")); *O'Dea v. Olea*, 2009 UT 46, ¶ 32, 217 P.3d 704 (nontechnical words are generally "given the meaning which they have for lay-men in . . . daily usage" (internal quotation marks omitted)).

¶19 The starting point for discerning such meaning is the dictionary. A dictionary is useful in cataloging a range of possible meanings that a statutory term may bear. HENRY M. HART, JR., & ALBERT M. SACKS, THE LEGAL PROCESS: BASIC PROBLEMS IN THE MAKING AND APPLICATION OF LAW 1375–76 (William N. Eskridge, Jr. & Phillip P. Frickey eds., 1994). It provides "an historical rec-ord, not necessarily all-inclusive, of the meanings which words in fact have borne." *Id.* at 1190. Such a record, however, will often fail to dictate "what meaning a word *must* bear in a particular con-text." *Id.* (emphasis added). That question will often require fur-ther refinement—of selecting the best meaning among a range of options, based on other indicators of meaning evident in the "con-text of the statute (including, particularly, the structure and lan-guage of the statutory scheme)." *Olsen*, 2011 UT 10, ¶ 12.

(a)

¶20 Dictionary definitions of "independent" share a core con-cept. The consistent thread in the dictionaries we have consulted is a lack of "influence, guidance, or control of another or others," or a state of not being "determined or influenced by someone or

---

corporation or the members generally, that would reasonably be expected to impair the objectivity of [a director's] judgment when participating in the action to be taken." *Id.* § 1.40(34). And a "ma-terial relationship" is "a familial, financial, professional, employ-ment, or other relationship that would reasonably be expected to impair the objectivity of [a director's] judgment when participat-ing in the action to be taken." *Id.* § 1.40(35).

something else." AMERICAN HERITAGE DICTIONARY 892 (5th ed. 2011). Independence, in other words, conveys the idea of not being "subject to the control or influence of another," or of not being "dependent or contingent on something else." BLACK'S LAW DICTIONARY 838 (9th ed. 2009).

¶21 The key determinant of "independence" under these definitions is the absence of factors or interests that might influence or control a decision or outcome. Yet this dictionary conception leaves unanswered two crucial considerations: *what* amounts to an external or outside influence, and *how much* such influence is sufficient to compromise one's independence. The former consideration obviously depends on the nature of the decision and the qualities expected of the decisionmaker. *See id*. at 838–39 (defining "independent *advice*" as "[c]ounsel that is impartial and not given to further the interests of the person giving it"). And the latter question is also open to context-driven debate, as the cited definitions themselves indicate. *Compare* AMERICAN HERITAGE DICTIONARY 892 (5th ed. 2011) (defining "independent" as "[*f*]*ree from* . . . influence, guidance, or control" (emphasis added)), *with* BLACK'S LAW DICTIONARY 838 (9th ed. 2009) (suggesting a notion of independence requiring only that a decision not be "dependent or contingent on something else").

¶22 To answer these questions, we look to other indicators of statutory meaning, focusing on the language and structure of the surrounding terms of the statute.

(b)

¶23 First, as to *what* amounts to an external influence, the statute speaks in both affirmative and negative terms. On the affirmative side, the statute requires the committee's decision to be "based" "upon" a "reasonable inquiry" into whether "the maintenance of the derivative proceeding is . . . in the best interest of the nonprofit corporation." UTAH CODE §16-6a-612(4)(a). That provision helps clarify the considerations on which the committee's decision is supposed to be based—specifically, on the "best interest of the corporation," and not on any other interests.

¶24 Section (4)(c) reinforces this conclusion by negative foreclosure of specific outside influences that implicate something other than the interests of the corporation. The provision lists three factors and provides that "[n]one of [them] by itself causes a director

9

to be considered not independent." UTAH CODE § 16-6a-612(4)(c). We read the statute to deem the listed considerations relevant to the assessment of independence. We reach that conclusion under the presumption of independent meaning (and/or its converse, the presumption against surplusage), which, as applied here, assigns significance to the qualifying phrase "by itself." *See VCS, Inc. v. Utah Cmty. Bank*, 2012 UT 89, ¶ 18, 293 P.3d 290 (rejecting an argument because it ran "afoul of the settled canon of preserving independent meaning for all statutory provisions").

¶25 In context, that phrase implies that the listed factors are at least *relevant* (if not sufficient) to establishing a lack of independence. Omitting the qualifier ("by itself"), in other words, would convey outright irrelevance of the listed factors, and we construe the added language to add something—here, to indicate that the considerations enumerated by (4)(c) *are relevant*, but just not alone sufficient.[7]

¶26 Section 4(c)(i), for example, illustrates the relevance of personal relationships through its identification of a specific personal relationship that may cut against a finding of independence—the nomination of a committee member by a director. *See* UTAH CODE § 16-6a-612(4)(c)(i). And section 4(c)(ii) illuminates the importance of self-interest by making reference to a particular form of self-interest—that implicated where a committee member is named as a defendant in the derivative suit. *See id.* § 16-6a-612(4)(c)(ii).

¶27 Section 4(c)(iii) confirms the statute's focus on self-interest as a key factor undermining a committee member's independence. Under this provision, "the approval by the director of the act being challenged in the derivative proceeding or demand" is insufficient alone to foreclose a finding of independence "*if the act*

---

[7] The Wisconsin Supreme Court reached the same result in construing an identical statutory provision, rejecting the proposition that the considerations enumerated in Wisconsin's statute were irrelevant. *See Einhorn v. Culea*, 612 N.W.2d 78, 86 (Wis. 2000) ("The legislature understood the significance of the factors it listed. It allows the . . . court to give weight to these factors; the statute simply states that the presence of one or more of these factors is not *solely* determinative of the issue of whether a director is independent." (emphasis added)).

*resulted in no personal benefit to the director." Id.* § 16-6a-412(4)(c)(iii) (emphasis added). By negative implication, this provision suggests that *if* a challenged act *does* result in a personal benefit to a director, then a lack of independence is strongly indicated.[8] Together, these provisions help clarify that personal relationships or self-interest give rise to the kinds of influences that might undermine a committee member's independence.

¶28 Thus, the structure and context of the Nonprofit Corporation Act make clear what is otherwise missing from the dictionary definition of "independent": The influences that may deprive a committee member of the independence required by statute are the self-interests and personal relationships that have a tendency to undermine the statutory focus on the best interest of the corporation.

(c)

¶29 That leaves the question of how much outside influence is sufficient to compromise a committee member's independence. A threshold answer to that question is also implicit in the language and structure of section (4)(c).

¶30 As noted above, that provision sets forth three considerations that are relevant to independence assessments, *supra* ¶¶ 24–25 (explaining how the presumption against surplusage makes the factors in (4)(c) relevant), but emphasizes that these factors are insufficient, standing alone, to "cause[] a director to be considered not independent." In doing so, the provision indicates that independence does not require a complete absence of any self-interest or personal connection.[9]

---

[8] Section 612(3)(e) is to the same effect. In clarifying the scope of discovery available in these proceedings, this section condones an inquiry into "whether the person or group conducting the inquiry is independent *and* disinterested," while foreclosing discovery of "any facts or substantive issues with respect to the act, omission, or other matter that is the subject matter of the derivative proceeding." (Emphasis added.) The implication is clear. A committee member's self-interest is relevant to the pre-merits "independence" inquiry.

[9] The Wisconsin Supreme Court, in construing an identical statutory provision, reached the same conclusion. *See Einhorn*, 612

¶31 For example, the fact that a person was nominated as a director by an individual named as a defendant in the derivative suit, *see id.* § 16-6a-612(4)(c)(i), may suggest a personal relationship between the individuals. It may also suggest that the nominated person might feel somewhat beholden to or subject to influence by the nominating individual. And any of these possibilities might affect a special committee member's judgment in assessing whether a suit against that person should proceed on the merits. Yet section (4)(c) still says that the nomination is insufficient standing alone to establish a lack of independence.

¶32 Thus, the Nonprofit Corporation Act does not require special committee members to be completely free from influence, guidance, or control in order to qualify as independent. Instead, we read the statute simply to identify the kinds of considerations that might undermine a committee member's independence, and to leave for case-by-case evaluation the question whether the committee member is reasonably likely to be able to base her decision on the best interest of the nonprofit corporation, and not on some external consideration rooted in self-interest or motivated by a personal relationship.

2

¶33 The district court erred in applying a standard that diverges from the one outlined above. We also find error in the procedural mechanism—summary judgment—that it invoked in reaching its decision. And because that decision left unresolved some factual questions of relevance to the disposition of the case, we are unable to resolve the matter on the record before us. We accordingly remand to allow the district court to do so under the standards set forth in this opinion.

(a)

¶34 In assessing the special litigation committee's independence, the district court applied a standard that diverged from the one set forth herein. It identified some external "self-interest" and

---

N.W.2d at 90. ("A finding that a member of the special litigation committee is independent does not require the complete absence of any facts that might point to non-objectivity. A director may be independent even if he or she has had some personal or business relation with an individual director accused of wrongdoing.").

"personal relationship" considerations—"board membership" and "being named as a director defendant" for Arlene Johnson and Anthony Sarra, and a "casual social relationship" and "business relationship with director defendants" for Kim Wilson. But it did not address whether or to what extent these considerations were likely to affect the committee members' decision.

¶35 More significantly, the court ignored the property owners' assertion that each of the committee members personally benefited from the allocation decisions challenged in the underlying suit due to their ownership of property situated on roads that allegedly have received preferential treatment. Receipt of such a "personal benefit" could jeopardize the independence of a special committee member under the statute. *See* UTAH CODE § 16-6a-612(4)(c)(iii).[10]

¶36 The district court accordingly erred. The statutory standard as clarified above is a fact-intensive one, not susceptible to the categorical analysis it was given below.

---

[10] The directors contend that this benefit is not a "personal" one since the members of the committee were not the only ones who owned property located along roads serviced by the HOA. But that is beside the point. The mere fact that the benefit was not "unique" to these committee members does not mean that it could not have been "personal" to them.

Whenever a "group" receiving an allocation of a corporate benefit includes less than all corporate stakeholders, the allocation will have redistributive effects (in that those in the group will receive more than their share of the benefit). Such redistributive allocations are like a dividend payable to only half of a corporation's shareholders (including, conveniently, the directors declaring it). A dividend of that sort could hardly be dismissed as impersonal (in the way that a dividend to all shareholders would be). So the directors' proposed group/individual distinction is unpersuasive. In assessing whether a benefit is a personal one, the focus should be on the likelihood that a particular benefit would lead a person to decide whether to recommend dismissal of the derivative suit in order to protect or preserve that benefit—and not on an independent assessment of the best interest of the corporation.

(b)

¶37 We likewise find error in the summary judgment mechanism employed in the disposition of the case. Summary judgment allows disposition before trial on issues on which there is no genuine issue of material fact. *See* UTAH R. CIV. P. 56(c). In cases where the evidence yields only one reasonable assessment of questions of fact, summary judgment avoids the cost and time of trial upon a determination that the moving party is entitled to judgment as a matter of law.

¶38 This mechanism is incompatible with the procedure for dismissal envisioned by section 612(4). The questions implicated on a statutory motion to dismiss by a special litigation committee do not lend themselves naturally to summary resolution. They are, as noted, inherently fact-intensive. And thus they typically would not be susceptible to disposition on the basis of a lack of any "genuine issue" of material fact. More often, the question of a special committee's independence would implicate disputed issues of fact on which reasonable minds could differ.

¶39 That eventuality, under a summary judgment model, would require denial of the motion and deferral of the matter for trial. *See* UTAH R. CIV. P. 56. But such deferral is not tenable under the procedure envisioned by section 612(4). The statutory mechanism of dismissal is a basis for a threshold avoidance of discovery and trial on the merits. That mechanism cannot be folded into a trial on the merits without undermining its *raison d'etre*.

¶40 Thus, although the statute contemplates a pretrial motion, that motion cannot properly be shoehorned into rule 56. It must instead be viewed as a *sui generis* statutory proceeding—one requiring resolution of disputed questions of fact of relevance to the statutory motion.

(c)

¶41 We accordingly reverse the district court's decision on the grounds that it was premised on a faulty legal standard and based on an inapplicable procedural framework. At the same time, we also acknowledge that our decision breaks new ground on issues of first impression in Utah, in a manner that the district court should not be faulted for not anticipating.

¶42 On such a posture, we might ordinarily proceed to determine whether the district court's decision might still be affirmed under the legal standard as clarified on appeal. But that analysis is not possible on the current record. Unresolved factual questions bearing on independence make it impossible for us to resolve that question in the first instance on appeal.

¶43 The unresolved issues include the above-noted question of the nature and extent of the alleged "personal benefit" inuring to committee members as a result of their ownership of property situated on a road that allegedly received preferential treatment. *See* UTAH CODE § 16-6a-612(4)(c)(iii). Although the directors admit that the HOA had limited funds (likely not enough to construct and maintain all necessary roads) and that a substantial percentage of the assessments collected by the HOA are expended on road maintenance, there are unresolved factual disputes about whether the road allocation and maintenance decisions challenged in the derivative suit afforded the special committee members any significant benefit—or, for that matter, whether these committee members received any preferential treatment at all. And without findings on these points, we cannot determine whether the receipt of this benefit was likely to taint the committee's decision.

¶44 The owners also attack Mr. Wilson's independence by claiming that he had a social relationship with some of the directors accused of wrongdoing in this derivative suit. And they assert that he was employed by Sunrise Engineering, a company that the HOA has hired in the past to work on its roads and that continues to seek to obtain road maintenance contracts from the HOA. But we do not know the extent of this social relationship or the scope of Mr. Wilson's employment relationship.

¶45 Finally, the property owners assert that two committee members were directors who approved the acts being challenged in the derivative suits (and were intimately involved in making those decisions as Director of Roads and Director of Legal), and that those members are also defendants in this action. While there do not appear to be unresolved factual disputes relating to these particular assertions, there is certainly room for disagreement about the weight of these considerations in the overall assessment of *all* factors bearing on independence. And we are in no position

to make that assessment before resolution of the factual disputes on other considerations.

¶46 In light of these unresolved factual questions, we disagree with the directors' assertion that "the undisputed evidence unequivocally shows that the appointing directors and the SLC members were independent" or that "[p]laintiff has entirely failed to present any evidence that would negate that independence."[11] The directors may or may not be right, but we are in no position to decide that in the first instance on appeal. We accordingly remand to allow the district court to make this assessment, applying the definition of independence clarified in this opinion.[12]

---

[11] The board members' allegation that they have done no wrong misses the mark. This is a merits argument. If it is true that they have done no wrong, presumably they will prevail in the derivative suit.

[12] *See Einhorn,* 612 N.W.2d at 93–94 (determining that the district court had applied the wrong legal standard in assessing the independence of the special committee members and remanding to the district court for an assessment of whether they were because "the facts [were] in dispute, and the circuit court ha[d] not made sufficient findings of fact upon which [the Supreme Court could] apply the legal test set forth"); *Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629, 638 (Colo. 1999) (en banc) (holding that "the role of a Colorado trial court in reviewing an SLC's decision regarding derivative litigation should be limited to inquiring into the independence and good faith of the committee. Here, the trial court did not make any findings with regard to whether the [SLC] was in fact independent and disinterested or whether the procedure [it] undertook for evaluating the claims was appropriate. . . . Here, the trial court decided not to defer to the [SLC's] business judgment. That conclusion may or may not be correct, depending upon the answer to the questions of whether the [SLC] . . . was an independent and disinterested decision-maker. Hence, on remand, the trial court must make those preliminary determinations. If the [SLC] . . . was independent, and did employ reasonable procedures in [its] analysis, then the court may not second-guess [its] business judgment in deciding not to pursue the derivative litigation.").

B

¶47 Because we remand, we also briefly address another issue that may arise on remand. The property owners assert that where a nonprofit corporation elects to use a special committee in determining whether a derivative suit should be dismissed, the special committee, and not the tainted board, must determine whether the maintenance of the derivative suit is or is not in the best interest of the corporation. We agree. Utah Code section 16-6a-612(4)(a) clearly states that it is the special committee (and not the board) that must make this determination and recommendation[13] — although the statute does not foreclose the possibility that the special committee might recommend such a course of action and the board might then simply implement it.[14] Whether the committee actually did recommend dismissal in this case appears to be a disputed issue on the record before us. Thus, on remand, if the directors continue to press their independence challenge, and if the court ultimately determines that the committee was independent, the court must also determine that the committee — not the board — recommended dismissal of the suit in order for the court to accept its recommendation.

_____

[13] *See Janssen v. Best & Flanagan*, 662 N.W.2d 876, 884 (Minn. 2003) ("The key element is that the board delegates to a committee of disinterested persons the board's power to control the litigation. A mere advisory role of the special litigation committee fails to bestow a sufficient legitimacy to warrant deference to the committee's decision by the court." (citation omitted)).

[14] This is what the directors claim occurred in this case, and it also appears to be consistent with Utah Code section 16-6a-612(4)(a), which notes that it is the committee that must "determine[]" that the "maintenance of the derivative proceeding is not in the best interest of the nonprofit corporation," but says that the "derivative proceeding shall be dismissed by the court on motion by the corporation."