*This opinion is subject to revision before final publication in the Pacific Reporter*
**2016 UT 11**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ADRIAN GORDON,
*Petitioner*,

*v.*

STATE OF UTAH,
*Respondent*.

No. 20140345
Filed March 23, 2016

On Direct Appeal

Third District, Salt Lake
The Honorable Paul G. Maughan
No. 130908310

Attorneys:

Troy L. Booher, Beth E. Kennedy, Jensie L. Anderson, Salt Lake City,
for petitioner

Sean D. Reyes, Att'y Gen., Andrew F. Peterson, Ass't Att'y Gen.,
Salt Lake City, for respondent

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, and
JUSTICE HIMONAS joined.

JUSTICE JOHN A. PEARCE became a member of the Court on
December 17, 2015, after oral argument in this matter, and
accordingly did not participate.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1     This case and its companion, *Meinhard v. State*, 2016 UT 12,
present issues of first impression under Part 3 of the Post-Conviction
Remedies Act (PCRA). UTAH CODE §§ 78B-9-300 to -304. In this case
Adrian Gordon's petition for postconviction DNA testing was
denied on the basis of the State's assertion that Gordon had declined

to request DNA testing at the time of the underlying trial for "tactical reasons." *Id.* § 78B-9-301(4). We reverse and remand on procedural grounds. We hold that Gordon was entitled to file a memorandum in opposition to the State's motion to dismiss the petition. We also clarify the operative burdens of pleading and proof on the question whether the petitioner declined DNA testing at trial for "tactical reasons," and provide guidance as to the meaning of the "tactical reasons" clause.

I

¶2    Adrian Gordon was convicted of murder in 2002. After we affirmed his conviction in 2004, *State v. Gordon*, 2004 UT 2, 84 P.3d 1167, Gordon filed a petition under Part 3 of the PCRA, *see* UTAH CODE § 78B-9-300 to -304. His petition seeks DNA testing on previously untested items from the scene of the murder in an effort to prove his factual innocence.

¶3    Gordon has identified several items found at the scene of the crime that allegedly could contain the true killer's DNA: the victim's wallet and pants pocket, a pair of sunglasses, two Big Gulp cups left near the victim's body, and a bloody slab of cement that may have been used as the murder weapon. If each piece of evidence produces DNA from the same third party (not Gordon), Gordon posits that the DNA testing would "significantly undermine the prosecution's theory." Petition for Post-Conviction DNA Testing at 6. And he claims that such testing could establish his factual innocence in light of the largely circumstantial case presented against him at trial.

¶4    Gordon's petition set forth the pleading elements enumerated in section 301(2) of the PCRA. *See* UTAH CODE § 78B-9-301(2). It also included an allegation addressed to section 301(4), which forecloses DNA testing if the petitioner failed to seek DNA testing at trial for "tactical reasons." *Id.* § 78B-9-301(4). On this matter Gordon asserted that he "did not fail to request testing of the above-described evidence at the time of trial for tactical reasons." Petition for Post-Conviction DNA Testing at 7 But he failed to offer any further explanation of this assertion, either in the petition or in the supporting memorandum.

¶5    After Gordon filed his petition, the State filed a response asking the district court to dismiss Gordon's petition. In its response, the State alleged that Gordon failed to demonstrate that he had not declined DNA testing at trial for "tactical reasons" under the terms of section 301(4). *Id.* § 78B-9-301(4). And the State identified a specific tactical reason that it sought to attribute to Gordon—that he declined to request DNA testing so that he could use the absence of testing to

undermine the prosecution's case. In support, the State pointed to the fact that Gordon's counsel had asked a police detective on cross-examination whether DNA testing was done, and referred to the lack of DNA evidence in closing arguments in an effort to undermine the prosecution's case. In the alternative, the State also claimed that even if Gordon could satisfy section 301(4), he could not satisfy his burden under 301(2)(f) of proving that the evidence he sought to test had "the potential to produce new, noncumulative evidence that will establish [his] factual innocence." *Id*. § 78B-9-301(2)(f).

¶6    The district court dismissed Gordon's petition twenty days after the State's response was filed. It did so before Gordon had an opportunity to oppose the State's filing, and without holding a hearing or conducting any additional fact-finding. In the dismissal order the court explained that it was dismissing the petition because Gordon failed to establish a non-tactical reason for declining DNA testing at trial under section 301(4). The order did not address the State's arguments regarding section 301(2)(f).[1]

¶7    After the district court entered its order, Gordon filed a motion for reconsideration. In that motion Gordon asserted that (1) the court should have allowed Gordon to reply to the State's response before dismissing the petition, and (2) the State bears the burden of establishing a tactical reason for Gordon's failure to request DNA testing. In support of that motion, Gordon submitted a declaration stating that his failure to request testing "was not a tactical . . . decision," explaining that he did not realize that the evidence in question could be subject to DNA testing and insisting that he could not afford such testing in any event. Memorandum in Support of Petitioner's Motion for Reconsideration at Exhibit B.

¶8    The district court denied Gordon's motion for reconsideration on three grounds. It first noted that motions for reconsideration "are not recognized by the Utah Rules of Civil Procedure." Minute Entry and Order (April 9, 2014). Second, the court concluded that the PCRA does not explicitly give a petitioner a right to reply to a response by the State. And third, the court stated that Gordon's motion "still [did] not address the clear statutory mandate that prohibits the [c]ourt from ordering DNA testing where it 'was available at the time of trial and the person did not request DNA testing . . . for tactical reasons.'" *Id.*

---

[1] As noted below, *see infra* ¶ 40, we likewise do not reach this question on this appeal.

¶9   Gordon filed this appeal. In challenging the district court's decision, Gordon raises a series of threshold questions of law—as to whether a petitioner under Utah Code section 78B-9-301 has a right to file a reply to the State's opposition, who bears the burden of proof on alleged "tactical reasons" for not seeking DNA testing at trial, and what is the proper interpretation of the term "tactical reasons." We consider those questions *de novo*, without any deference to the district court. *Gardner v. State*, 2010 UT 46, ¶ 55, 234 P.3d 1115.

II

¶10 Gordon challenges the dismissal of his petition for DNA testing on both procedural and substantive grounds. As to procedure, Gordon claims that the district court erred in refusing to allow him an opportunity to file a response in support of his petition and in assigning him the burden of proof on the question whether he declined to request DNA testing at the underlying trial for "tactical reasons." As for substance, Gordon claims the court erred in its determination that his decision not to request such testing was "tactical" under the terms of the statute.

¶11   We reverse on procedural grounds. We hold that Gordon was entitled to file a response to the State's opposition to his petition under Utah Rule of Civil Procedure 65C, and remand to give him an opportunity to do so. In so doing, we resolve two other matters that were briefed on appeal and are likely to arise on remand. We hold that the question whether DNA testing was declined for "tactical reasons" is a matter on which the State bears the burden of pleading but the petitioner bears the burden of proof. And we clarify the interpretation of the "tactical reasons" that may foreclose a petition for DNA testing.

A

¶12   The procedure for filing and disposition of a petition for DNA testing is governed by statute and also by rule. By statute, a petitioner seeking postconviction DNA testing must file a petition "assert[ing] factual innocence under oath" and alleging that a series of statutory conditions are met. UTAH CODE § 78B-9-301(2). The petitioner is also required to "serve notice upon the office of the prosecutor who obtained the conviction" and "upon the Utah attorney general." *Id*. § 78B-9-301(6)(a). And "[t]he attorney general shall, within 30 days after receipt or service of a copy of the petition, or within any additional period of time the court allows, answer or otherwise respond to all proceedings initiated under this part." *Id*. "After the attorney general is given an opportunity to respond to a

petition for postconviction DNA testing, the court shall order DNA testing if it finds by a preponderance of the evidence that all criteria of Subsection (2) have been met." *Id*. § 78B-9-301(6)(b).

¶13 The governing procedural framework for disposition of a postconviction petition for DNA testing is not clear on the face of the PCRA. But it becomes clear when the statute is read in conjunction with our rules of civil procedure. And the PCRA should be read in harmony with, and not as an end-run around, those rules. *See* UTAH CONST. art. VIII, § 4 (recognizing this court's power to promulgate rules of "procedure and evidence," while limiting the legislature's authority to that of amending the rules "upon a vote of two-thirds of all members of both houses"); UTAH CODE § 78B-9-301(3) (providing that postconviction petitions "shall comply with Rule 65C, Utah Rules of Civil Procedure").

¶14 Our civil rules prescribe various means by which the State may "answer or otherwise respond" to a petition. UTAH CODE § 78B-9-301(6)(a); *see also* UTAH R. CIV. P. 65C(k). Those means include an "answer" under civil rule 8 and a "motion" under civil rules 12 or 56. *See Menzies v. State*, 2014 UT 40, ¶ 49, 344 P.3d 581 (interpreting rule 65C(k) to authorize either a rule 8 answer or a motion under rule 56). An answer under rule 8 does not directly seek disposition by the court; it simply admits or denies the allegations of the petition (or complaint) and asserts affirmative defenses. A motion is different. It seeks immediate disposition by the court.

¶15 The State's filing cannot be understood as a mere answer, as it did not merely admit or deny allegations and assert affirmative defenses but sought immediate disposition. In that sense the response was effectively a motion. It asserted a request that the court "deny the petition for DNA testing" and articulated grounds for that request. And it submitted the matter to the court for immediate disposition—without the benefit of any discovery, evidentiary hearing, or fact-finding.[2]

---

[2] A motion isn't the only procedural means for requesting disposition of a PCRA petition. A party seeking resolution by the court may also "certify" the case as "ready for trial" under civil rule 16(b). But the State's response here made no mention of a trial, and no such proceeding was held. There was no merits hearing in which the parties presented evidence and the court made findings of fact and conclusions of law. There was only an order dismissing the

(continued…)

¶16 By rule Gordon had a right to file a formal opposition to the State's filing. A party opposing a motion is entitled to submit a memorandum in opposition. *See* UTAH R. CIV. P. 7(c); *Id.* 65C(k). And Gordon was afforded no such opportunity. That was error.[3]

¶17 The error was not rendered harmless, as the State suggests, by the district court's disposition of Gordon's motion for reconsideration.[4] First, it is not apparent on the record that the court gave full consideration to the arguments presented by Gordon in his motion for reconsideration. Second, and in any event, the timeframe on the motion for reconsideration was much narrower than the timeframe that should have been afforded to Gordon on an opposition to a motion to dismiss. Gordon should have been given thirty days to "respond by memorandum" to the State's motion. UTAH R. CIV. P. 65C(k). The briefing and decision on his motion for reconsideration were considerably tighter than that.

---

petition on the basis of the parties' written arguments. This was, in effect, a disposition on motion.

[3] Rule 65C expressly acknowledges a circumstance in which a district court may dismiss a petition for postconviction relief summarily and *sua sponte*. *See* UTAH R. CIV. P. 65C(h) (directing the assigned judge to review the petition and to dismiss the claim if it "has been adjudicated in a prior proceeding" or "appears frivolous on its face"). But the negative implication is apparent. Except in the narrow circumstances prescribed by rule, dismissal of a postconviction petition should not be *sua sponte* but upon briefing, including an opportunity for the petitioner to be heard. Such an opportunity, in fact, may be the petitioner's right as a matter of due process. *See In re Adoption of B.Y.*, 2015 UT 67, ¶ 23, 356 P.3d 1215 ("Mere notice is an empty gesture if it is not accompanied by a meaningful chance to make your case. So the Due Process Clause also guarantees such a chance—'an opportunity to be heard at a meaningful time and in a meaningful manner.'" (citation omitted)).

[4] There was no error, of course, in the district court's denial of Gordon's motion for reconsideration. Such a motion, after all, is not recognized in our rules of civil procedure. *See Gillett v. Price*, 2006 UT 24, ¶ 6, 135 P.3d 861 (emphasizing that "postjudgment motions to reconsider are not recognized anywhere in either the Utah Rules of Appellate Procedure or the Utah Rules of Civil Procedure"). But Gordon should not have been required to file such a motion, as he had a right to file a memorandum in opposition to the State's motion.

¶18 We reverse and remand on this procedural ground. In so doing we leave it to the district court to decide how best to proceed in light of this court's opinion.[5]

### B

¶19 The above is sufficient to dispose of this appeal. But the briefing on appeal has also raised two other issues that are likely to arise on remand — who bears the burden of pleading and proof as to a DNA petitioner's "tactical reasons" for not seeking DNA testing at trial, and what is the proper interpretation of that statutory term. We address these issues below in the interest of judicial economy and to provide guidance to the parties on remand.

### 1

¶20 A petitioner seeking postconviction DNA testing under the PCRA must file a petition alleging a series of statutory elements including, for example, that the evidence "is still in existence and is in a condition that allows DNA testing to be conducted," and that "the proposed DNA testing is generally accepted as valid in the scientific field or is otherwise admissible under Utah Law." UTAH CODE § 78B-9-301(2)(a), (e). In a separate subsection, the statute also provides a basis for defeating the petitioner's right to testing. Under section 301(4), "[t]he court may not order DNA testing in cases in which DNA testing was available at the time of trial and the person did not request DNA testing or present DNA evidence for tactical reasons." *Id*. § 78B-9-301(4).

¶21 The parties disagree as to the effect of these provisions on the burdens of pleading and proof as to a petitioner's "tactical reasons."

---

[5] Presumably the State's motion is one under rule 56, not 12. It appears to be such in that it does not accept the petitioner's factual allegations as true, but instead challenges them as unsupported. If so, then we presume that the matter would proceed on remand under the terms of rule 56, with the respondent bearing the burden of establishing that there are no genuine issues of material fact and that the respondent is entitled to judgment as a matter of law. If such a showing cannot be made, moreover, we presume that the motion would be denied, and the court should "set the proceeding for a hearing" as required by civil rule 65C(l). *See supra* ¶ 15 n.2 (noting the propriety of a bench trial for disposition of a PCRA petition). We leave the details to the district court, however, subject to the legal limitations set forth in this opinion.

Although the statute does not speak directly to these burdens, we interpret it as steering a middle course—assigning the burden of pleading to the State but the burden of proof to the petitioner.

¶22 The statutory reference to the petitioner's "tactical reasons" for declining to request DNA testing is a matter of "avoidance." *See* UTAH R. CIV. P. 8(c) (listing affirmative defenses, noting that they are matters "constituting an avoidance"). It is presented in the PCRA not as an element that must be pleaded by the petitioner, but as a basis for defeating a petition that is otherwise sufficient. *See* UTAH CODE § 78B-9-301(2) (listing the seven elements the petitioner must allege to assert a viable claim for DNA testing); *id.* § 78B-9-301(6)(b) (directing the district court to order DNA testing if all of the elements of section 301(2) are met). By negative implication, this indicates that the question whether the petitioner declined to pursue DNA testing for "tactical reasons" is not an element of the petitioner's case. It is thus not a matter the petitioner must plead, but instead an affirmative defense to be pled (if at all) by the State. *Cf.* UTAH CODE § 78B-9-105(2) (placing "the burden of pleading" other "ground[s] of preclusion" on the respondent to a PCRA petition).

¶23 Often the burden of proof follows the burden of pleading. But not always. And here we think the burden of proof must fall on the petitioner. For reasons explained below, we hold that the State has the burden of pleading that the petitioner declined to request DNA testing for "tactical reasons," but that the burden of proof shifts to the petitioner to establish that he did not have "tactical reasons" for such failure. *Cf.* UTAH CODE § 78B-9-105(2) (placing the burden of disproving the existence of other grounds for preclusion on the petitioner).

¶24 The general presumption is that the burden of proof follows the burden of pleading.[6] But the presumption is rebuttable; sometimes the burden shifts. And it is appropriately shifted in circumstances where the responding party has unique access to proof of the matter in question.[7] That consideration weighs heavily

---

[6] *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) ("The burdens of pleading and proof . . . should be assigned to the plaintiff who generally seeks to change the present state of affairs." (quoting 2 J. STRONG, MCCORMICK ON EVIDENCE § 337 (5th ed. 1999))).

[7] *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 494 n.17 (2004) (noting that the burden may shift to the party who "has peculiar means of knowledge" about the information required to carry the burden of proof (quoting 9 J. WIGMORE, EVIDENCE § 2486 (J.

(continued…)

in favor of shifting the burden of persuasion on the question of the petitioner's "tactical reasons" for declining DNA testing at trial. It is hard to imagine a matter more peculiarly within the knowledge of the PCRA petitioner than the "tactical" basis for a particular decision made at the underlying trial. The petitioner's tactical reasons typically will be kept to himself and not shared with the prosecution. And such reasons will be protected by the attorney-client privilege, and thus not available to the State through discovery.

¶25 For these reasons we hold that the burden of disproving "tactical reasons" for declining DNA testing at trial belongs to the PCRA petitioner. Once the State raises this matter as an affirmative defense, the burden of persuasion shifts to the petitioner.

¶26 The standard of proof is preponderance of the evidence. *See* UTAH CODE § 78B-9-105(2) (stating, as to other grounds of preclusion, that "once a ground has been pled, the petitioner has the burden to disprove its existence by a preponderance of the evidence"). To carry this burden, the petitioner may proffer non-tactical reasons for the decision not to seek DNA testing, supporting those reasons with affidavits or evidence in the record. In response, the State may seek to rebut the petitioner's showing and also to identify alleged tactical reasons, supporting those reasons with any evidence that is available and opening the door to rebuttal evidence by the petitioner.[8] Ultimately, it will fall to the district court to sort through the evidence and decide whether the petitioner has established by a preponderance that the decision not to seek DNA testing at trial was not for any "tactical reason[]."

C

¶27 That leaves the question of the meaning of "tactical reasons" under section 301(4). Gordon has identified two purportedly non-tactical reasons for not seeking DNA testing at trial—that he did not know it was possible to subject the evidence in question to DNA testing and that he could not afford it. In the briefing on this appeal,

_____

Chadbourn ed., rev. ed. 1981))); *Campbell v. United States*, 365 U.S. 85, 96 (1961) (explaining the injustice of requiring a party to carry the burden of proof on matters that are "peculiarly within the knowledge" of the opposing party).

[8] As explained below, the "reasonableness of a lawyer's decision" is not the question; but it may affect the court's assessment of the credibility of the evidence presented by the parties. *See infra* ¶ 34 n.11.

the State has advocated for affirmance on the ground that these reasons are "tactical."

¶28 We do not resolve these questions conclusively here; we deem that inappropriate given that Gordon has not had the opportunity to file an opposition to the State's response to the petition, and the issues in question are somewhat fact-intensive. But we do provide some guidance for the court on remand, in response to the parties' arguments on this appeal.

¶29 A *tactical* reason is one "involving tactics." AMERICAN HERITAGE DICTIONARY 1771 (5th ed. 2011) (defining "tactical"). And a tactic is "[a] device or expedient for accomplishing an end." WEBSTER'S THIRD NEW INT'L DICTIONARY 2327 (2002). So a *tactical reason* is a reason marked by "the arrangement of procedure with a view to ends." *See* OXFORD ENGLISH DICTIONARY online (defining "tactical"). And it does not, accordingly, encompass actions that are purely passive and lacking in purposefulness (such as simply not thinking about the possibility of DNA testing).[9] But it does extend to purposeful decisions not to seek DNA testing at trial.

¶30 A straightforward example of a tactical reason would be a concern that DNA test results might turn out to be unfavorable for the defense. *See Johnson v. State*, 2012 UT App 262, ¶ 2, 286 P.3d 1289. Another would be a purposeful decision to use the lack of DNA testing as a tool to attack the prosecution's case. *See State v. Murdock*, 2011 UT App 71, ¶ 4, 253 P.3d 80. Such decisions are tactical in the sense that they are purposefully aimed at accomplishing a desired end—at increasing the likelihood of an acquittal.

¶31 Gordon proffers a further limitation on what should count as a *tactical reason*. He suggests that an objectively *unreasonable* decision at trial cannot be *tactical*. We disagree.

¶32 Granted, we sometimes speak of a *tactical* act as something "[c]haracterized by adroitness, ingenuity, or skill." AMERICAN HERITAGE DICTIONARY 1771 (5th ed. 2011). But that does not mean that a decision that seems unreasonable in hindsight was not made

---

[9] Dictionaries are "useful in cataloging a range of possible meanings that a statutory term may bear." *Hi-Country Prop. Rights Grp. v. Emmer*, 2013 UT 33, ¶ 19, 304 P.3d 851. They may, as here, reveal that words have "a limited range of meaning" and help exclude an "interpretation that goes beyond that range." ANTONIN SCALIA, A MATTER OF INTERPRETATION: FEDERAL COURTS AND THE LAW 24 (Amy Gutmann ed., 1997).

for "tactical reasons" *at trial*. That is the relevant timeframe under section 301(4). This provision bars postconviction requests for DNA testing when trial counsel declined to "request DNA testing . . . for tactical reasons." UTAH CODE § 78B-9-301(4). The relevant question is therefore whether the petitioner's trial counsel made a purposeful tactical decision *at trial* in declining to seek DNA testing.[10] Any decision based on counsel's purposeful analysis would be based on the "adroitness, ingenuity, or skill" of trial counsel—whether or not it turned out to be a bad tactic in hindsight.

¶33 When we speak of having a tactical reason for doing something, we imply only a purposeful basis for the decision at the time it was made. The tactical *reason* does not disappear if it is later apparent that the decision was an imprudent one. We may then think of the decision as a tactical error or mistake. But we still understand that it was done for a tactical reason. If a football coach runs a double-reverse pass on a third down and one yard to go when his team has a lead in the fourth quarter, we would question the quality of his "adroitness, ingenuity, and skill" as a coach. But unless he chose the play at random out of the playbook, we wouldn't say that he lacked a *tactical reason* for his decision. We would just say that he made a tactical error.

¶34 The same goes for the decisions of trial counsel under the terms of section 301(4). A lawyer, like a football coach, may make tactical mistakes. But so long as the lawyer is purposefully attempting to represent his client, his decision not to seek DNA

---

[10] In this respect, the focus of the "tactical reasons" inquiry under section 301(4) is different from consideration of counsel's "tactical reasons" on claims for ineffective assistance of counsel. *See, e.g., State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162; *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996). In those cases the question is whether trial counsel *could have had* any *conceivable* tactical reason for a particular decision at trial—since any such reason is sufficient to defeat a claim for ineffective assistance under the Sixth Amendment. *See Clark*, 2004 UT 25, ¶ 6 (noting the "'strong presumption that . . . trial counsel rendered adequate assistance,'" and emphasizing that a defendant must prove that there "was *no 'conceivable tactical basis* for counsel's actions'" (citation omitted)). But the sense of "tactical reasons" under the PCRA is manifestly different. The focus here is on the *actual reasons* motivating a decision not to seek DNA testing at trial.

testing at trial will be deemed to have been made for "tactical reasons," thus barring a postconviction request for testing.[11]

¶35  We close with some observations on the reasons proffered by Gordon in this case. The first reason is simple ignorance—that Gordon did not know that the evidence in question was susceptible to DNA testing. On one hand, ignorance is a classic non-tactical reason. As noted above, tactical reasons must be purposeful ones. So if no thought was given to DNA testing at Gordon's trial, it cannot be said that he "did not request DNA testing or present DNA evidence for tactical reasons." UTAH CODE § 78B-9-301(4).

¶36  That said, we cannot resolve this matter on the record before us on appeal. Gordon has not presented any evidence of *counsel's* understanding or analysis of the availability of DNA testing. And that is plainly central to the analysis under section 301(4). Tactical decisions at trial are made by—or at least on advice of—counsel. Counsel's knowledge, moreover, would be imputed to the client.[12]

---

[11] That does not mean that the reasonableness of a lawyer's decision is utterly irrelevant. At some point the unreasonableness of a decision may be so apparent that the court may question whether there was any purposeful—tactical—decision made at all. In a close case in which each side presents opposing evidence on the question whether there was a tactical reason to decline to seek DNA testing, the fact-finder could deem such a decision so unreasonable that there could have been no tactical reason at all.

The converse would also hold. A trial lawyer's insistence that he never thought about the possibility of DNA testing would not have to be accepted at face value. In the face of a significant, obvious tactical advantage in forgoing DNA testing at trial, a court might find a lawyer's assertion of ignorance of the possibility of such testing not credible.

Ultimately, however, the standard is purposefulness, not reasonableness. And the question would be for the court to resolve on the basis of evidence of trial counsel's actual thought process as informed by circumstantial evidence of what is reasonable under the circumstances.

[12] A lawyer is an agent to the client, and an agent's knowledge is imputed to the principal. *See* RESTATEMENT (THIRD) OF AGENCY § 5.03 (2006) ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal."). A principal may therefore be held legally responsible for the knowledge of the agent. *See Swan Creek*

(continued…)

So without some evidence of Gordon's counsel's knowledge or understanding, we cannot determine on this appeal whether Gordon's reasons for not seeking DNA testing at trial were non-tactical. We leave that matter for the district court on remand.[13]

¶37 The same goes for Gordon's other proffered non-tactical reason—that he could not afford it. We cannot conclude on this record whether this was a non-tactical reason or a tactical one. Economic considerations, in our view, could be either tactical or non-tactical. On one hand, if a defendant has such limited resources that he cannot afford to engage defense resources beyond the bare payment of the fees charged by his attorneys, then it could conceivably be said that he had no choice in the matter of requesting DNA testing and thus could not have made a purposeful decision.[14] Yet not all financial decisions are non-tactical. Resource allocation, at some level, can be a core tactical decision at trial.[15] So a decision, for example, to prioritize a different defense strategy over DNA testing would be a tactical one, as would a decision not to request DNA

---

*Vill. Homeowners v. Warne*, 2006 UT 22, ¶ 27, 134 P.3d 1122 (agent's knowledge of assessments on property imputed to the principal).

[13] As noted above, however, the analysis of the question of the purposefulness of counsel's trial decisions may be informed by considerations of reasonableness. The district court, in other words, would not be bound to accept counsel's assertion of ignorance or inattention. If the State points to evidence that any reasonable lawyer would have known that DNA testing was available, the court could conclude that counsel's assertion of ignorance is not believable.

[14] *See State v. Schoonmaker*, 176 P.3d 1105, 1114 (N.M. 2008) (overruled on other grounds by *State v. Consaul*, 332 P.3d 850, 858 (N.M. 2014) ("A defendant's inability to pay for necessary experts is not a trial tactic or strategy . . . .")).

[15] *See Gregg v. State*, 2012 UT 32, ¶¶ 63–64, 279 P.3d 396 (Lee, J. dissenting) (noting that attorneys are required to "*adequately* investigate" a case, but "[e]ven the best lawyers with the biggest budgets make inevitable decisions about when to stop investigating" (citation omitted)) .

testing because its benefits seem too marginal to justify spending money on it.[16]

¶38 We also leave this matter for resolution on remand. Because Gordon was not afforded an opportunity to submit a response to the State's motion and the State has not had a chance to file a reply, the record at this point is incomplete. Once those filings have been submitted, the district court will be in the best position to resolve the question presented.

## III

¶39 We remand for further proceedings consistent with this opinion. On remand, Gordon should be afforded an opportunity to file an opposition to the State's motion to dismiss Gordon's DNA testing petition and the State should be allowed to file a reply.[17] After those papers have been filed, it will fall to the district court to determine whether Gordon declined DNA testing at trial for "tactical reasons." *See* UTAH R. CIV. P. 65C(l) ( "After pleadings are closed, the court shall promptly set the proceeding for a hearing or otherwise dispose of the case.").[18] That question can be resolved on summary judgment if the State can establish its right to judgment as a matter of law under rule 56 of our rules of civil procedure. If not, the resolution of that question may require a bench trial (and, perhaps, discovery and other trial preparation).

¶40 The "tactical reasons" question may not be the only matter for resolution by the district court, however. To succeed on his petition for DNA testing, Gordon will have to satisfy all of the other elements of Part 3 of the PCRA, including by showing that the evidence he sought to test had "the potential to produce new, noncumulative evidence that [will] establish [his] factual innocence. . . ." UTAH CODE

---

[16] *See Carter v. State*, 2012 UT 69, ¶ 25, 289 P.3d 542 (listing "limitations in time, funding, and resources" as a possible tactical reason for failing to raise a claim at trial).

[17] Civil rule 65C(k) does not expressly call for a reply, but we find such a right incorporated in rule 7(e). UTAH R. CIV. P. 7(e)(1) ("Within 7 days after the memorandum opposing the motion is filed, the moving party may file a reply memorandum").

[18] We read rule 65C's reference to disposition by "hearing or otherwise" as an incorporation of other rules of civil procedure. Thus, where the rule refers to disposition by "hearing," it is recognizing the possibility of disposition by a hearing on a motion or ultimately a bench trial.

§ 78B-9-301(2)(f). If the district court reaches that issue on remand in this case, it should do so in light of our interpretation of that provision in *Meinhard v. State*, 2016 UT 12.

————————